AUGUST HEIDEL and His Wife v. HENRY BENEDICT and Another.[1]

May 24, 1895.

Nos. 9226—(48).

### Homestead—Undivided Blocks.

Blocks in the platted and laid-out part of an incorporated city were generally subdivided on the plat into lots of various sizes, but one block was not thus subdivided. The property was city or urban in character. *Held*, that the owner of a part of the undivided block was entitled to hold as a homestead only a tract equal in area to the average size of platted lots in that part of the city.

### Attachment—Amendment.

An attachment is discharged as to an assignee in a general assignment for the benefit of creditors by an amendment to the complaint and affidavit for attachment, made after the execution of the assignment, substituting an entirely different and distinct cause of action for the one set up in the original complaint and affidavit.

### Res Judicata—Motion.

The determination of a motion is not res judicata, so as to prevent the parties from drawing the same matters in question again in an action.

Action in the district court for Ramsey county by August Heidel and Margaret Heidel, his wife, against Henry Benedict and Henry Habighorst. From an order, Kerr, J., denying a motion to vacate the decision and for a new trial plaintiffs and defendant Habighorst appealed. Affirmed as to plaintiffs. Reversed as to defendant Habighorst.

*T. R. Palmer*, for appellants Heidel.

*Lewis E. Jones*, for appellant Habighorst.

*Ambrose Tighe*, for respondent.

MITCHELL, J. Action to determine adverse claims to real property. The contest is triangular, and grows out of the following state of facts: The plaintiff owned 227½ feet by 120 feet in the southeasterly corner of block 13 in Dayton's addition to St. Paul, upon which was situated a house in which he resided. This block

[1] Reported in 63 N. W. 490.

was not subdivided into lots, but the blocks generally in the addition had been subdivided by plat into lots, varying in size from 35 to 55 feet in width, and from 95 to 170 feet in depth. The property in the addition is strictly urban in character.

On November 24, 1893, the defendant Benedict commenced an action against the plaintiff in which a writ of attachment was issued and levied on the property in question. In both the complaint and affidavit for attachment the cause of action was stated to be upon account for goods sold and delivered by Benedict to Heidel. Within 10 days after the levy of the attachment, Heidel made an assignment of all his nonexempt property to defendant Habighorst for the benefit of all his creditors. The question is raised whether this was a common-law assignment or an assignment under the insolvent law of 1881; but, as we view the case, this question is not material. After the execution of this assignment, Heidel made a motion to dissolve the attachment. Thereupon Benedict amended his complaint, setting up, in place of the original cause of action, 16 other separate causes of action, 14 of which were promissory notes executed by Heidel to various parties, and by them transferred to Benedict, and the two others, respectively, for money loaned and for goods sold to Heidel by other parties who had assigned the claims to Benedict. Benedict also made a motion for leave to amend his affidavit for attachment, so that the statement of his causes of action would conform to his amended complaint. When the motions came on for hearing, the court denied Heidel's motion to dissolve the attachment, but allowed Benedict's motion to amend his affidavit.

Heidel then commenced this action, his contention being that the entire tract was exempt as his homestead, and hence was not subject to attachment, and did not pass by his assignment for the benefit of creditors. Both of the defendants denied that the whole tract was thus exempt, but, as against each other, Benedict claimed that his attachment constituted a lien on the nonexempt part of the tract prior and paramount to the assignment for the benefit of creditors, while Habighorst claimed that, as to the assignment, the attachment was discharged—First, by force of the assignment itself, as being made under the insolvent law of 1881; and, second, because of the amendment of the complaint and affidavit for

attachment substituting entirely different causes of action after the rights of creditors under the assignment had intervened.

The trial court held that Heidel was only entitled, as a homestead, to the dwelling and the land on which it was situated, not exceeding in size the average sized lots in Dayton's addition; and that upon the remainder of the tract Benedict's attachment constituted a subsisting lien, paramount to Habighorst's interest under the assignment. Both Heidel and Habighorst appealed.

1. We are of opinion that the decision of the court as to the extent of Heidel's homestead exemption was correct. The tract was within the laid-out or platted portion of an incorporated city. It was strictly urban in character,—a fact which distinguishes the case from that of In re Smith's Estate, 51 Minn. 316, 53 N. W. 711, relied on by plaintiff's counsel. It is almost impossible to construe the crude provisions of our homestead law without sometimes resorting to what might seem to be judicial legislation, and it is almost equally difficult to build up a line of decisions that will always be strictly logically consistent with each other; but the conclusion arrived at by the trial court is the only equitable and reasonable one under the facts of this case. It is not to be presumed that the legislature intended that where a part of the platted portion of an incorporated city, strictly urban in character, was not subdivided into lots on the plat, a party might claim an exemption to the extent of acres; while his neighbor across the street, residing on a block of exactly the same kind of property, but subdivided on the plat into lots, could only claim two or three thousand square feet.

2. Assuming that, as between the parties to the action, the amendments to Benedict's complaint and affidavit for attachment were permissible, yet we are of opinion that the effect of them was to discharge the attachment as to the intervening rights of Habighorst, and the creditors whom he represents, under the assignment. The amendment, it will be observed, is not of matters of mere form, or of the manner of stating the same cause of action, but is a substitution of entirely different causes of action, having no connection with that set up in the original complaint and affidavit.

The extent of the right of amendment as against the defendant in an action is not necessarily by any means the extent of the right

of amendment as against third parties who have acquired interven-
ing rights in the attached property. The intervening rights of
third parties are quite as sacred as the plaintiff's right of amend-
ment as against the defendant debtor. The courts have likewise
generally recognized subsequent attaching creditors as occupying
in this regard a more favored position than voluntary purchasers,
so that some amendments which would be allowed against the lat-
ter would be held to discharge the attachment as to the former;
and it seems to us that the rights of creditors under a general as-
signment for their benefit are quite as great as those of attaching
creditors. The authorities seem to be practically all one way on
this question, and we have found no case that goes anywhere near
so far as to hold that, as against creditors, a plaintiff may amend
by substituting an entirely different and distinct cause of action
for the one stated in his original complaint and affidavit.

That this cannot be done would seem on principle to be self-evi-
dent. Creditors under this assignment are entitled to all the sur-
plus that is left after satisfying the liens upon the property existing
at the date of the assignment. When this assignment was made,
the claim upon which the property had been attached was wholly
fictitious and unfounded. Hence no recovery could have been had
upon it, and the creditors under the assignment would have secured
the property unincumbered. But by this amendment, made after
the rights of creditors had intervened, it is sought to secure a lien,
paramount to these rights, for other debts which had not been sued
on at all at the date of the assignment.

With one exception, all the cases cited by counsel for Benedict
relate to the right of amendment as between the parties to the
action, and hence are not in point. The only case where the rights
of a third party had intervened is Tilton v. Cofield, 93 U. S. 163.
But in that case the indebtedness stated in the original affidavit
and declaration was upon account for goods sold and delivered,
while in the amended affidavit and declaration it was upon a note
for the same amount given to balance the same account set forth
in the prior proceedings and representing the same debt; and the
court places its decision expressly upon the ground that, while the
description of the cause of action was changed, yet it was, in view
of equity and in point of fact, substantially the same with that origi-

nally described. The court also calls attention to the distinction, already alluded to, between creditors and voluntary purchasers; saying that the parties in that case "are not subsequent attaching creditors, nor creditors at all; they are purchasers lite pendente." The authorities upon this question are cited in Waples,. Attachm. § 145, and Drake, Attachm. § 282 et seq. Our conclusion is that the attachment was discharged as to the assignee, Habighorst, by the amendment referred to.

It appears that, before this action was commenced, the assignee had intervened in the suit between Benedict and Heidel, and made a motion to dissolve the attachment, and that the court denied the motion. It is now claimed that, under this decision, the validity and priority of the attachment lien is res judicata. But it is well settled that the determination of a motion or summary application is not res judicata, so as to prevent the parties from drawing the same matters in question again in the more regular form of an action. 2 Black, Judgm. § 691; Kanne v. Minneapolis & St. L. Ry. Co., 33 Minn. 419, 23 N. W. 854.

Upon the appeal of the plaintiffs the order appealed from is affirmed, and upon the appeal of defendant Habighorst the order appealed from is reversed.

On application for rehearing the following opinion was filed June 4, 1895:

MITCHELL, J. The application for a reargument is denied; but in doing so it is proper to say that possibly the statement in the opinion that "the determination of a motion or summary application is not res judicata, so as to prevent the parties from drawing the same matters in question again in the more regular form of an action," may be too broad, and not universally true under our practice. It was not necessary to go that far in this case. The case of Dwight v. St. John, 25 N. Y. 203, relied on by counsel as qualified and limited by the subsequent case of Riggs v. Pursell, 74 N. Y. 370, only goes to the extent of holding that in the case of an order affecting a substantial right, and appealable when a full hearing has been had on a controverted question of fact, the decision of a point actually litigated upon the motion is an adjudication binding upon the parties, and conclusive to that extent.

In the present case it appears from the memorandum of the trial judge that the only question which Habighorst, as intervenor, was permitted to litigate, was whether the assignment by Heidel to him for the benefit of creditors was under the insolvent law of 1881, and hence ipso facto worked a dissolution of the Benedict attachment. The court held that it was merely a common-law assignment, and therefore did not ipso facto dissolve the attachment; and this was the only question litigated or decided on the motion.     Hence, under any rule, the questions decided by us were not res judicata by the order denying the motion.