Oconto Co. v. Esson, 112 Wis. 89.

---

THE OCONTO COMPANY, Respondent, vs. ESSON, imp., Appellant.

WRIGHT, Respondent, vs. ESSON, imp., Appellant.

BELLEW, Respondent, vs. ESSON, imp., Appellant.

*October 19 — November 5, 1901.*

*Attachment: Inclusion of later claims: Discharge: Subsequent purchasers.*

As against a purchaser of attached property equity will not permit the enlargement of the amount of the attaching creditor's lien by the inclusion of claims in the judgment which were not in exist-

ence at the inception of such lien, thus reducing the residuum of the debtor's estate therein; and where such claims are included in the judgment the attachment is discharged.

APPEALS from judgments of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

Three actions to set aside an attachment as a cloud upon the title of certain lands owned by the plaintiffs. The facts regarding the status of the title of each plaintiff are not the same, but the differences are not of such moment as to require particular mention. Some years previous to 1890 the defendant and one S. A. Coleman entered into an arrangement by which defendant was to look up, select, and furnish Coleman the descriptions of state and government lands, estimate the timber thereon, and look after trespasses. Coleman was to enter the land and pay the taxes. Together they were to sell the lands, and out of the proceeds Coleman was to reimburse himself for his outlay, and the remainder of the proceeds was to be equally divided between them. From time to time, prior to the date aforesaid, defendant looked up and furnished the descriptions of a large number of acres of such lands, including the lands in suit, and Coleman took title in his own name. From time to time, also, sales were made; but Coleman, not having paid over to defendant his share of the proceeds, in June, 1890, the latter commenced an action against Coleman to recover a balance of $17,104.57 claimed to be his due on a mutual unsettled account. In said action an attachment was issued and levied upon a large number of forty-acre tracts of land which had been entered by Coleman under the arrangements mentioned, and which covered all, or nearly all, of the lands in suit. Coleman appeared in said action, admitted defendant's claims to the amount of $11,735.51, denied the rest, and set up by way of setoff and counterclaims items in said unsettled account amounting to $17,079.47, and counterclaims not in said account amount-

ing to $7,830.72. The reply of defendant thereto, served May 11, 1891, admitted $6,719.98 of said setoffs and counterclaims, and set up other items in his favor in said account, amounting to $501.03. In September, 1893, defendant moved and obtained a reference of said action on the ground that it involved the determination and examination of a long account of at least 100 items of charges and credits extending over many years. Nothing was ever done in said action until it was settled as hereinafter stated. Meanwhile Coleman continued selling the lands so held by him, and at different times sold to plaintiffs the greater part of the lands involved in these suits, under varying circumstances; the plaintiffs in each instance paying the full value therefor.

On May 12, 1894, defendant began a second action against Coleman on said agreement for $16,604.38 as his share of the proceeds of said lands sold by Coleman under their contract after the first action was begun, and made claim therein for his share of the purchase price of the lands which had been conveyed to plaintiffs. Another attachment was issued, and some eleven forty-acre tracts of land were levied upon. Coleman appeared and set up the same setoffs and counterclaims as in the first action, and the defendant set up the same counterclaims as in his former reply.

Neither of said actions was ever brought to trial. On February 23, 1899, Coleman and defendant got together, and compromised and settled all their differences, and entered into a stipulation, entitled in both said actions and signed by their respective attorneys, as follows:

"It is hereby stipulated by the plaintiff and defendant in the two actions above entitled that all claims and counterclaims and other matters in controversy in said actions and each of them, and all other causes of action of every name or nature, if any, existing between or held by them or either of them, be, and the same are hereby, compromised and settled in the following manner, to wit: That the said plaintiff shall

have and take judgment of said court against the said defendant in the action first above entitled for the sum of fifteen thousand five hundred dollars (15,500); that the said plaintiff shall have and take judgment of said court against the said defendant in the action secondly above entitled for the sum of five hundred dollars (500); that each of said judgments shall be in the ordinary form of judgments for the recovery of money in actions on contract, but that each of said judgments shall be without costs to either party. It is further stipulated that the two judgments herein agreed upon may be perfected and entered on record without further notice to said defendant or his attorneys.

"Green Bay, Wis., Feb. 23, 1899."

Pursuant to this stipulation judgment was taken in the first of said actions for $15,500 and in the other for $500. At that time defendant considered Coleman financially irresponsible, and said judgments were entered the best to secure, as he believed, the amount stipulated to be due, regardless of the part thereof due, on the basis of the compromise or otherwise, in the respective actions. The court found that under the stipulation all claims and causes of action in and out of both said actions were settled and compromised, and that it cannot be determined exactly how much of the judgment entered in the first action was for claims and causes of action of defendant in said second action; but, on the basis that defendant was entitled to $16,000 in both actions, he would, on the proofs, be entitled to more than half that sum in the second action. The court also found that other claims to a small amount, not included in either of said actions, were settled by said stipulation, and that there was some 400 acres of land held by Coleman, for his share of which defendant sued, which had not been sold by Coleman at that time. On March 29, 1899, defendant issued execution on his said judgment, specially directing the sale of all the interest Coleman had on June 6, 1890, or had since acquired, in about all of the lands in suit.

The above are the facts substantially appearing in the

*Oconto Company* case, except that some findings relative to the plaintiff's title are omitted as not being material. The findings in the other cases vary somewhat in particular details, but are substantially the same on the main question involved. On the argument the plaintiffs raised a number of questions of considerable importance against the right of the defendant to insist upon his attachment lien. The trial court, in a very long and exhaustive opinion, considered all of said questions, and ruled in favor of the defendant, except upon one, which he considered decisive against him. His conclusions upon this branch of the case are as follows:

"The next claim made by the plaintiff is that the settlement and stipulation, on which judgment was entered in the attachment action, dissolved the attachment.

"The proposition that the attachment can only be enforced by a judgment resting solely on the cause or causes. of action on which the attachment is founded seems to be supported on principle and by authority, and not to be controverted by defendant's counsel. If no cause of action exists in favor of the plaintiff when the attachment is levied, although judgment may be entered in the plaintiff's favor on some other cause of action brought in by amendment, or without any cause of action in fact existing, the attachment lien falls as against subsequent attaching creditors or purchasers. *Barth v. Graf*, 101 Wis. 36; *John V. Farwell Co. v. Wright*, 38 Neb. 445; *Heidel v. Benedict*, 61 Minn. 170. And the result is the same if a new cause of action or count is brought in by amendment or any other proceeding, and the new claim enters into and forms part of the amount for which judgment is recovered. *Freeman v. Creech*, 112 Mass. 180. Some cases go so far as to hold that the mere amendment of the complaint by adding a new cause of action, or the reference of the case to try the issue and all other causes of action that either party may have against the other, dissolves the attachment. But I think that reason and the better authority requires that the recovery should be on something in part not included in the original cause of action on which the attachment was issued. *Seeley v. Brown*, 14 Pick. 177–180; *Tilton v. Cofield*, 93 U. S. 163; *Wood v. Denny*, 7 Gray, 540; *Fairfield v. Baldwin*, 12 Pick. 395.

·Where the record shows that a new count was added, bringing in a new cause of action or claim, or that the reference included other causes of action than the one on which the attachment was based, and the judgment does not show whether the new claim entered into and formed part of the amount recovered, the fact may be shown by parol.  *Freeman v. Creech,* 112 Mass. 180.   But in such case the burden of proof is upon the attaching creditor to show that nothing was added to the amount of his recovery by reason of the new claim or cause of action. *Willis v. Crooker,* 1 Pick. 206, note 2; *Seeley v. Brown,* 14 Pick. 177–180.

" The action of *Esson* against Coleman, in which the lands in question were attached, was commenced in June, 1890. The complaint contained several causes of action, showing an. indebtedness of $17,104.57.   Coleman's answer admitted ·$11,735.51 of the plaintiff's claims, and set up counterclaims amounting to $17,079.47.  *Esson's* reply admitted these counterclaims to the amount of $6,719.38.  This left $5,369.06 of items in the complaint and $10,360.09 of the items in the counterclaim disputed on the pleadings, exclusive of interest.   If no part of the disputed items in the counterclaims were allowed, the largest judgment that the plaintiff (*Esson*) would be entitled to would be $10,385.19.   If all his claims were allowed, and if none of the disputed items in the plaintiff's complaint were allowed, and if all of Coleman's counterclaims were allowed, Coleman would be entitled to judgment for $5,343.96.

"In May, 1894, *Esson* brought another action against Coleman on several causes of action, all of which accrued after the commencement of his first action.   The amount due him, exclusive of any interest, on the cause of action in this second action, was $16,604.38.   Coleman by his answer admitted $778 of the items claimed, and denied the balance, $15,826.38, and set up the same claims as counterclaims as in the first action.   It appeared from the allegations and admissions in the pleadings in the two actions, and the affidavits on which the plaintiffs therein obtained an order of reference in the first action, that during all the time the several claims and counterclaims of the respective parties set up in the first action accrued there was an open running account between the parties; the items of the plaintiff's claim consisting of the items that he claimed credit for in that account, and items of the defendant's counterclaims

consisting of the items in said account that Coleman claimed credit for.    Hence, considering the two actions together, none of the items in Coleman's counterclaim set up in both actions could be applied against any of *Esson's* claims in the second action, unless there was found a balance due Coleman in the first action; and that balance only could be so applied.    This must be so, first, because, there being a mutual running account between the parties, in the absence of any other application the law would offset the earliest items against each other, and leave due to either party at any time only the balance in his favor; second, the parties by their pleadings in the first case made a specific application of payments of their respective claims.    And when the plaintiffs bought the lands from Coleman, subject to the lien of the attachments, that lien was only for the balance that might be found due *Esson* after allowing all due Coleman on his counterclaims.    Coleman and *Esson* could not by agreement apply the counterclaim in reduction of the plaintiff's claim in the second action, for the purpose of enlarging the lien of the attachment in the first action, to the prejudice of Coleman's grantees.    The status of the second action of *Esson* against Coleman, on the pleadings, was this:    *Esson's* claim was admitted to the amount of $778. He was entitled to as much more of the disputed $15,826.38 as his proofs might show him entitled to, without any offsets, unless it turned out in the first action that *Esson's* claims therein, so far as valid, had been fully paid and there was a balance due Coleman."

Here follows a statement as to the entry of the judgments and a copy of the stipulation.    Continuing, the trial judge says :

" Does not the stipulation show conclusively on its face that all the claims and counterclaims in both actions were considered in the one settlement, and that one amount was arrived at for which the plaintiff should have judgment against Coleman ?    How is it possible to say, from the stipulation, that only the claims made by *Esson* in the first action were considered in arriving at the amount for which he was to have judgment in that action, and that his claim in the second action for $16,604.38, admitted to the amount of $778, was not at all considered and nothing was allowed on account of it ?    To reach any such conclusion we must

disregard the plain language of the stipulation that all claims in both actions were compromised and settled together, and we must conclude that, after settling the claims involved in the first action ·by themselves, without considering those involved in the second action, the parties then agreed as to the second action, without considering anything involved in the first, that the plaintiff might have judgment in it for $278 less than was admitted by the pleadings to be due him; for it must be remembered, as above shown, that the counterclaim could cut no figure in the second action so long as anything was allowed the plaintiff in the first. If, in making the settlement, the parties had agreed that everything allowed the defendant (Coleman) on his counterclaims should be offset against the plaintiff's claim in the second action, the effect would have been the same as if the plaintiff's claim in the second action had been put into the first action and formed part of the basis of recovery. On the face of the stipulation there is no apparent reason for two judgments. Judgment · could as well have been entered in either action fo⁻ the full amount of $16,000, and the other action dropped. It would have been less expensive to *Esson*, had he taken but one judgment. If judgment had been entered in the first action for the full amount at which all the claims were compromised, viz. $16,000, there certainly could have been no question as to the claim in the second action entering into and forming part of the amount recovered. Is it not equally clear that it did so when the judgment in the second action was for less than admitted to be due *Esson* on his claim in that action? If the cases had been tried, and the respective items investigated, some allowed, some rejected, wholly or partially, and amount for which judgment was given thus arrived at, it could have been shown what claims were considered and what not. So, had the parties, in their attempt to settle, gone through with the respective claims and agreed to reject some as having no foundation, it might have been shown what entered into the compromise and what did not; but, in the absence of any evidence as to what took place back of the final agreement, we must conclude, as the stipulation says, that all claims in both actions were considered entered into the settlement and compromise, and that every claim made by the plaintiff was considered by Coleman in arriving at a compromise, and that, had more than

half of the plaintiff's claims been withdrawn, the amount agreed on would have been much less. When all claims are considered together, and a compromise arrived at, it seems impossible to say that any one claim was recovered for and another not. It is like submitting to the jury the evidence for and against a dozen claims, aggregating $30,000, and their bringing in a verdict for $10,000. It would not be possible to say what particular items they allowed, and if the original cause of action, on which an attachment was issued, had been for $10,000, and others had been added by amendment, and testimony tending to support all introduced, and counterclaims asserted, it would not be possible to enforce the attachment lien by a judgment entered on that verdict. And it would not help his case for the plaintiff in such action to swear that more than $10,000 was due him on the original claim, when the answer denied it and its validity was one of the issues tried. The verdict in such case, after judgment, would be conclusive that no more was due on all the claims over and above offsets. So the stipulation between *Esson* and Coleman must be taken as conclusive as to the amount that *Esson* was entitled to recover judgment for on account of all his claims against Coleman. It is conclusive on *Esson* that he compromised on the basis that, whatever his claims amounted to, Coleman's counterclaim amounted to enough to reduce the amount he was entitled to, to $16,000. If it appears conclusively from the record in the case that the claims asserted by *Esson* in his second action entered into the amount for which the claims in the first action were compromised, the fact cannot be contradicted by parol. If it is not clear from the record, parol evidence is admissible to show the fact. *Esson* was the only witness examined on the subject. He makes no attempt to show that the claims involved in the first action were settled and $15,500 agreed on as the amount due him, and those involved in the second suit settled at $500. He swears that his claim in the second suit was just as valid as his claim in the first suit, which, reduced to figures, means that, exclusive of interest, his valid claim in the first suit was $10,385.19, and in the second suit $16,604.38. He says, in effect, that all the claims and counterclaims were settled for $16,000; that the only reason why he took judgment for $15,500 in one case and for $500 in the other was the value of the attachment lien

in the respective cases. Aside from that, he could have had the amounts divided equally between the two judgments. *Esson's* testimony throws no light upon the manner in which the amount ($16,000) was arrived at, any further than it shows that he insists upon the validity of all his claims in both suits. In arriving at the compromise Coleman's counterclaim must have figured largely, and, as everything conceded in the compromise on account of them should, as against the plaintiffs in this action, have gone in reduction of *Esson's* claim in his first action against Coleman, the testimony tends to show that the judgment in that action was based in part upon the plaintiff's claims in the second action.

"While *Esson's* testimony does not show the negotiations leading up to the compromise and stipulation, his answer does. It alleges that in 1894 an attempt was made by Coleman to effect a settlement. In 1898 Coleman offered *Esson* in settlement lands in Tennessee, valued at $18,000 by Coleman. That offer was rejected, because of defective title in part, and this defendant (*Esson*) 'offered to accept judgment for $16,000, to which said Coleman agreed, and authorized his attorneys to settle both actions accordingly, and *thereupon* the stipulation for judgment in the first action for $15,500, and in the second action for $500, was duly made.' (fol. 18) 'That all his [*Esson's*] claims in both actions were compromised at $16,000, and the said judgment for $15,500 in the first action was taken only to obtain the lien of the attachment in that action to the amount of $15,500.' (fol. 22) It appears, not only from the face of the stipulation, but also from *Esson's* testimony and pleadings, that there was no separate settlement of the two actions; but his entire claim of $16,604.38 in the second action was included in and formed the principal basis of the recovery of $15,500 in the first action.

"The stipulation also shows that, if there were any other causes of action existing in *Esson's* favor at the time against Coleman, they also entered into the settlement. The burden of proof is on the plaintiff to show the existence of another or other causes of action. They have done it to this extent only. It appears, from *Esson's* complaint in his two actions against Coleman, that Coleman sold the timber only from some of the lands entered by him under their contract. This left the title to the land in Coleman after the timber was removed. The land at the time, with the timber re-

moved, was considered of but little, if any, value. In 1896, for a consideration of $2,500, Coleman quitclaimed to one Grunert what right, title, and interest he had in something over 20,000 acres of lands in several counties in the northeastern corner of the state, and all causes of action that he had for timber from, or trespasses committed on, any of said lands, and about fifty city lots in the city of Oconto; and said deed included 120 acres of said lands from which Coleman had sold the timber. When that sale was made, *Esson* became entitled to recover from Coleman further compensation for services relative to that 120 acres of land, determined by the amount that Coleman sold them for. We have no way of determining what, if anything, Coleman received for the 120 acres, or such title as he may have had to them at that time. If the whole $2,500 was paid for the 20,000 acres, it would amount to but $12\frac{1}{2}$ cents per acre, or $15 for the 120 acres. If something is allowed for the city lots and cause of action, it would reduce the price per acre still lower. I do not think that any substantial cause of action has been shown for lands sold. As to the lands unsold it does not appear what became of them. They were probably abandoned for taxes, as most of such lands were at that time. I think that *Esson's* testimony shows that no cause of action other than those set up on the two actions were considered or entered into the settlement or judgments; but, because the causes of action on which *Esson's* second action against Coleman was based, all of which had no existence at the time the attachment was issued, were considered and entered into the settlement and judgment in the first action, the attachment lien upon the lands was lost as against the plaintiffs, who were purchasers for full value.

"It follows, from this view of the case, that the plaintiff is entitled to the relief demanded in its complaint; and it is not necessary to consider several other questions which have been fully argued."

Judgments were duly entered for the plaintiffs, and the defendant appeals from each judgment.

For the appellant there were briefs by *Charles Quarles*, of counsel, and *Ellis & Merrill*, attorneys, and a brief in reply and oral argument by *Mr. Quarles*.

*George G. Greene*, counsel for the respondents *The Oconto Company* and *Bellew*, argued, among other things, that the

first judgment being partly for claims in the second action the attachment in the first action was discharged. *Bean v. Parker*, 17 Mass. 591; *Hill v. Hunnewell*, 1 Pick. 192; *Fairfield v. Baldwin*, 12 Pick. 388; *Freeman v. Creech*, 112 Mass. 180; *Heidel v. Benedict*, 61 Minn. 170; *Farwell v. Wright*, 38 Neb. 445; *Whitney v. Brunette*, 15 Wis. 61, 74; *Laighton v. Lord*, 29 N. H. 237; *Page v. Jewett*, 46 N. H. 441; *Mooney v. Kavanagh*, 4 Me. 277; *Clark v. Foxcroft*, 7 Me. 348; *Bowley v. Bowley*, 41 Me. 542, 546; *Estlow v. Hanna*, 75 Mich. 219; *Mayer v. Zingre*, 18 Neb. 458; *Barth v. Graf*, 101 Wis. 41. The principle is that an attachment can only be enforced for a judgment for the same claim the attachment was for. The affidavit required by sec. 2731, Stats. 1898, is jurisdictional. *Hawes v. Clement*, 64 Wis. 152, 155; *Goodyear R. Co. v. Knapp*, 61 Wis. 103. Without statute it is not amendable. *Slaughter v. Bevans*, 1 Pin. 348. The statute (sec. 2731a) permits amendment only to state facts existing at the time of making the original. Probably this reaches only irregularities. *Goodyear R. Co. v. Knapp*, 61 Wis. 103. At any rate it excludes power to amend to include any claims in the second action of *Esson v. Coleman*, for none of them existed until long after the making of the affidavit for attachment in the first action.

*H. O. Fairchild*, of counsel for the respondent *Wright*, argued, among other things, that the effect of including in the judgment new, different, and after-accruing causes of action was to release the lien of the attachment. Drake, Attachment, §§ 282–284; *Whitney v. Brunette*, 15 Wis. 74, and cases cited; *Page v. Jewett*, 46 N. H. 441; *Clark v. Foxcroft*, 7 Me. 348; *Fairbanks v. Stanley*, 18 Me. 296; *Bicknell v. Trickey*, 34 Me. 273, 283; *Young v. Broadbent*, 23 Iowa, 539; *Heidel v. Benedict*, 31 L. R. A. 422. Purchasers of property which is the subject of an action are bound by the judgment only so far as it is within the issues, and certainly a purchaser of attached property stands in no less favorable position.

*Hardy v. Mills*, 35 Wis. 149; *Braun v. Wis. R. Co.* 92 Wis. 251; *Lathrop v. Knapp*, 37 Wis. 307, 314; *Campbell v. Consalus*, 25 N. Y. 613; *Hymes v. Estey*, 116 N. Y. 509; *Stannard v. Hubbell*, 123 N. Y. 529; *Hailey v. Ano*, 136 N. Y. 569; *Whitney v. Marshall*, 138 Ind. 472, and cases cited; 3 Smith, Lead. Cas. (9th ed.), 2096, and cases cited; *Grunert v. Spalding*, 104 Wis. 223, 226. If the judgment taken in such case is predicated upon other issues, or there is a doubt as to what question or issue the judgment passed on where there are new as well as old issues on which it might have passed, the property is not affected by the judgment. *Pfennig v. Griffith*, 29 Wis. 618; *Van Valkenburgh v. Milwaukee*, 43 Wis. 574; *Bergeron v. Richardott*, 55 Wis. 132; *De Sollar v. Hanscome*, 158 U. S. 221; *Lea v. Lea*, 99 Mass. 496; *People ex rel. Bridgeman v. Hall*, 104 N. Y. 176; *Lewis v. Ocean N. & P. Co.* 125 N. Y. 348; *Legrand v. Rixey's Adm'r*, 83 Va. 862.

BARDEEN, J. The point upon which these cases seem to turn is whether there has been a waiver or discharge of defendant's attachment lien. At the outset we desire to acknowledge our great indebtedness to the judge who tried this case. He filed a written opinion covering all the questions litigated on the trial. His discussion of the question above mentioned is so exhaustive and so clear that our labors have been very much lessened, and if his conclusions are correct it leaves very little more to be said on the subject. We have felt at liberty to include the greater portion of his discussion in the statement, to which reference will be made as the questions raised are considered.

One of the important questions standing at the door of plaintiffs' right to recover is whether, by the terms of the settlement between defendant and Coleman, claims not in existence at the time the first action was begun were in fact included in the judgment and are now being enforced against

plaintiffs' lands. Upon the question of fact the trial judge found in the affirmative, and to the discussion contained in his opinion we are unable to add anything. The stipulation shows conclusively that all the claims and causes of action existing between the parties were considered in one settlement. The surrounding circumstances point with almost unerring certainty to the fact that a large part of defendant's judgment is made up of claims that had no existence at the time the first action was commenced, and was for the purchase price of the very lands now sought to be relieved from the lien mentioned. The substantial fact found by the court finds most ample support in the evidence produced, and we are content to rest our conclusion upon the discussion contained in the trial judge's opinion, which meets our entire approval.

Counsel for defendant ingeniously argue that plaintiffs, being subsequent purchasers of the land in question, are not protected against amendments or added causes of action; that, having obtruded themselves upon attached property, they are bound by all the results of the litigation within the power of the court to adjudge. To a limited extent this may be true. The statutory remedy by attachment, being summary in character and onerous in its effects, has always been restricted by most guarded rules of construction. Cases are innumerable that, in the absence of a statute authorizing it, a court has no power of amendment of an affidavit for an attachment. Our statute (sec. 2731a) permits amendments only to state "facts existing at the time of making the former affidavit." To secure an attachment the affidavit must allege an indebtedness and must specify the amount claimed. The indebtedness must exist at the time it is made. The law does not permit an omnibus affidavit to cover any indebtedness that may come into existence between the parties during the pendency of the litigation. The principle seems clear that an attachment can only be enforced by a

judgment for the same claim the attachment was for. The case of *Tilton v. Cofield*, 93 U. S. 163, is not an authority against this proposition. In that case the plaintiff first declared upon an account, but was subsequently permitted to amend his complaint and affidavit by setting up a promissory note given to balance the same account mentioned in the prior proceedings, and representing the same debt. The decision expressly rests upon the ground that, while the description of the cause of action was changed, yet it was, in view of equity and point of fact, substantially the same with that originally described. The only other case cited as seemingly running counter to this rule is *Nagle v. First Nat. Bank*, 57 Neb. 552. The action was commenced on a claim for goods sold, and certain personal property was attached. It was afterwards changed to one for money lent. Subsequent mortgagees insisted that the attachment was thereby dissolved. These mortgagees were creditors, and took mortgages, instead of attaching the property. As we grasp it, the case goes upon the fact that the creditors, having taken mortgages *pendente lite*, are bound by the judgment. It attempts to distinguish the case from *Heidel v. Benedict*, 61 Minn. 170, on that ground. The result of the ruling seems to be that if creditors attach they would be protected against changes in a prior attachment lien, but if they take mortgages or other security they are not. The distinction is quite too fine. The court disposes of *Freeman v. Creech*, 112 Mass. 180, by saying that it went upon a statute protecting purchasers from amendments unless they had notice. The statute only protected against an increase of the claim by amendment. The consequences of the inclusion of such increase in the judgment was to be determined upon general principles of law applicable to the situation. Prior decisions of the court sustained the principal case, and hence the attempt to dispose of the case as an authority failed. Probably the most conclusive reason why the *Tilton* and *Nagle Cases*

do not apply here is the fact that the claims which were the subject of amendment in those cases existed at the time the attachment was made. Here the claims largely included in the first judgment had no existence when that suit was begun, and it was never possible to include them in the complaint or in any affidavit of attachment therein. They did not exist until Coleman conveyed the lands, and consequently could never be the basis of the attachment of such lands in any action against him.

Counsel for defendant say that, in order to bring this case within the principle of the cases cited by the trial judge, there must be some element of fraud involved. If that were necessary, the facts already stated would seem to meet the requirement. Coleman was authorized to make sale of these lands. He did so. Defendant is now seeking to enforce payment of his share of the selling price of those lands in an attachment suit commenced before the sale was made. To permit this to be done would certainly be a fraud on the rights of the subsequent purchasers.

Defendant further claims that plaintiffs "had no vested right in any matter of defense or counterclaim." This contention becomes in a degree irrelevant, in view of the conclusion that there was such an intermingling of valid and invalid claims in the judgment as to constitute in law a waiver or release of the former attachment. Certainly plaintiffs, as intervening purchasers, had some rights which neither defendant nor Coleman could undermine or destroy. Undoubtedly they would be bound by the judgment, in so far as it was within the issues made or which might legally be made under our practice. But it was not competent for defendant and Coleman by agreement or collusion to destroy rights which had accrued pending the litigation, which were based upon their then existing legal relations. This principle is recognized and discussed in *Whitney v. Brunette*, 15 Wis. 61, and would seem to be quite evident without the

citation of authority. In *Page v. Jewett*, 46 N. H. 441, after discussing decisions in other courts, it is said:

"The proper view of the subject seems to be that any increase of the *ad damnum*, any amendment or change in the form of the action, which would be to the prejudice of subsequent attaching creditors, will not be allowed, and any such change made, to the actual prejudice of the rights of such creditors, will dissolve the attachment as against such creditors. It will also discharge bail. The subsequent attaching creditor has a vested right to the excess beyond the amount of the judgment to be rendered upon the writ of the first attaching creditor as it was when served."

Whether in all cases a subsequent purchaser stands in the same position as an attaching creditor we need not stop to inquire. One thing is certain: Equity will not permit the debtor and attaching creditor to enlarge the amount of the latter's lien by including matters in the judgment not in existence at the inception of such lien, and thus reduce the residuum of the debtor's estate.

Upon the whole case, we are satisfied with the ultimate conclusion reached by the trial court, and the judgment in each case must be affirmed.

*By the Court.*— So ordered.