BEYER and another, Respondents, vs. DOBEAS, imp., Appellant.

SAME, Appellants, vs. MORROW, imp., Respondent.

*November 13—December 7, 1909.*

*Attachment: Waiver: Inclusion of other claims in judgment: Execution: Mortgages: Priority of liens: Equity: Subrogation.*

1. When an attaching creditor takes judgment upon an amended complaint including claims other than those secured by his attachment, he will be deemed to have waived his attachment and to have elected to accept merely the lien and rights resulting from

the judgment, even where by reference to the pleadings it can be known definitely what amount of indebtedness secured by the attachment is included in the judgment.

2. Upon a judgment recovered by one who had attached land of the defendant, execution was issued in the form prescribed by subd. 1, sec. 2969, Stats. (1898), directing satisfaction out of any real property belonging to defendant at the date of the docketing of the judgment, and the sheriff sold and conveyed the interest which defendant had in the attached land at said date. The purchaser paid the full amount of the judgment, and all parties supposed that the procedure was such as to convey the whole interest of defendant at the date of the attachment. Upon foreclosure of a mortgage, the lien of which was subsequent to the attachment and prior to the judgment, it is *held* that the court properly imposed as a condition of the enforcement of the mortgage the recognition and satisfaction of a prior lien in favor of the execution purchaser for the amount paid by him.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The plaintiffs brought suit in statutory form to foreclose a mortgage on certain lands in Fond du Lac county, alleging the rights of *Dobeas* and *Morrow* to be subsequent and subject to the mortgage, which allegation they denied. The facts, mainly without dispute, are that on January 16, 1904, the title to the land was in the Badger Land & Lumber Company by a conveyance from Cyrus S. Hart, found to be void as to creditors. On that date Tibbs, Hutchings & Co. and Friend Bros. Clothing Company, creditors of Hart, commenced suits by attachment against him upon claims alleged to be then due, the first named for $1,050 and some interest, and the second for $330.50 and interest. On May 27, 1904, plaintiffs' mortgage was executed for full value and without notice of the fraudulent character of the conveyance to the Badger Land & Lumber Company. Traverses to the attachment were interposed and the issues found against the traversors. On December 5, 1905, judgments were docketed for the attaching plaintiffs in both actions; that in favor of Tibbs, Hutchings & Co. being upon their amended complaint for

$1,566.87 damages, and that in favor of the Friend Company for $429.75 damages and costs. The amendment to the Tibbs, Hutchings & Co. complaint, made August, 1905, consisted in the addition of two more promissory notes aggregating $450 and interest, which existed but were not due either at the date of commencing the attachment suit or at the date of the mortgage. Upon the day of the docketing of the judgments, execution was issued under each judgment in the general form prescribed by subd. 1, sec. 2969, Stats. (1898), directing the sheriff to satisfy the judgment out of the personal property of Hart, or, if sufficient personal property cannot be found, then out of any real property "belonging to the said C. S. Hart on the day when the said judgment was so docketed in your county or any time thereafter." In obedience to such executions the sheriff levied them "upon all the right, title, and interest which the defendant Hart had on the 5th day of December, 1905, or since acquired," in or to the mortgaged premises, and duly published his notices of sale of the same interest. At the sale under the Tibbs, Hutchings & Co. execution the defendant *Dobeas* bid $1,850, the amount of that judgment, with costs, and received from the sheriff a certificate of sale of all the right, title, and interest which Hart had on the 5th of December, 1905, or has since acquired. At the same sale under the Friend Company judgment the defendant *Morrow,* who was attorney for both attaching plaintiffs, bid in the name of the two attaching creditors $475.64, being the amount of the Friend Company judgment, with interest and costs of sale, and received a like certificate of sale, and the executions were returned, with the money proceeds of the sale, fully satisfied and entry of satisfaction of the judgments made by virtue thereof. *Dobeas* and *Morrow* alleged in their answer in the foreclosure suit that the attaching judgment creditors intended and supposed that said executions directed a sale of all the interest of Hart on January 16, 1904, and prayed judgment that the executions be

amended so as to effect a sale under the provisions of subd. 2, sec. 2969, Stats. (1898), and their title be adjudged superior to the plaintiffs', and that they be subrogated to the rights of the judgment creditors to enforce the judgments as liens on such mortgaged premises as of the date of January 16, 1904. The trial court found, in addition to the facts above stated, that

"Tibbs, Hutchings & Co. and Friend Bros. Company were mistaken as to their existing rights and interests under their judgments. They assumed that, on the docketing of the judgments, the lien of the attachments merged in the lien of the judgments, and that the lien of the latter would relate back to the time that the lien of the former attached, and that an execution directing a sale of the interests of the debtor at the time of docketing the judgment would designate and carry the interests as of the day of the attachment. On this assumption the executions were issued and the sales and purchases made and the judgments satisfied. There was no intent to release or relinquish the attachment liens, nor was there any intent to make a choice or election as to courses of action to be pursued."

The court held that, while the procedure on the executions was not such as to effectively transfer all the title resting in Hart on January 16th so as to entirely cut off the plaintiffs' mortgage, through the assumed misunderstanding it was effective to transfer to the purchasers, who had paid the full amounts of the judgments, all the rights of the judgment plaintiffs under their judgments, and therefore that *Dobeas* and *Morrow* should be subrogated thereto and in this suit in equity adjudged to have a lien to the amount of those judgments prior to the lien of plaintiffs' mortgage; but that by reason of the amendment of the Tibbs, Hutchings & Co. complaint and the inclusion in one money judgment of claims which were not due at the time of the levy of the attachments, nor included in them, such attachments had thereby been discharged; hence that Tibbs, Hutchings & Co. had, and *Dobeas*

acquired, by the sale, no lien earlier than the date of the judgment.

The court rendered judgment ordering sale upon foreclosure of plaintiffs' mortgage, payment out of the proceeds to *Morrow* of the amount of the Friend Company judgment, and payment of the balance of the proceeds to the plaintiffs upon their mortgage debt. From the part of the judgment establishing a prior lien in favor of *Morrow* and application of part of the proceeds of the sale thereto, plaintiffs appeal. From that part of the judgment denying *Dobeas* any lien prior to the mortgage, he appeals.

For the plaintiffs there were briefs by *Greene, Fairchild, North & Parker,* and oral argument by *J. R. North.* They contended, *inter alia,* that *Morrow* is not entitled to relief through subrogation. This is a case of a valid and not a void judicial sale. Where property is sold at judicial sale there is no warranty as to either the title or the condition of the property. The purchaser must inquire for himself and see that he is getting what he considers that he is bargaining for, as the rule of *caveat emptor* applies in full force. 17 Am. & Eng. Ency. of Law (2d ed.) 1010; *Gray v. Denson,* 129 Ala. 406, 30 South. 595; *Burns v. Hamilton's Adm'r,* 33 Ala. 210; *Pullen v. Simpson,* 74 Ark. 592, 86 S. W. 801; *Tilley v. Bridges,* 105 Ill. 336; *Bishop v. O'Connor,* 69 Ill. 431; *Barron v. Mullin,* 21 Minn. 374; *Campbell v. Parker,* 59 N. J. Eq. 342, 45 Atl. 116; *Jewett v. Feldheiser,* 68 Ohio St. 523, 67 N. E. 1072; *Smith v. Wortham's Heirs,* 82 Va. 937; *The Monte Allegre,* 9 Wheat. 616, 648; *Main v. Bosworth,* 77 Wis. 660; *Stanhilber v. Graves,* 97 Wis. 515; *Buchanan v. Edmisten* (Neb.) 95 N. W. 620; *Calvert v. Ash,* 47 W. Va. 480, 35 S. E. 887; *Williamson v. Jones,* 43 W. Va. 562; *Smith v. Huntoon,* 134 Ill. 24; *Brady v. Carteret R. Co.* 67 N. J. Eq. 641. There was no mistake of fact in the case at bar; nor any misrepresentation by any officer of the court; nor any "mistake of law." At any rate, the sort of mistake

that appears here will not be relieved against. *Hayes v. Stiger,* 29 N. J. Eq. 196; *Campbell v. Parker,* 59 N. J. Eq. 342; *Boorum v. Tucker,* 51 N. J. Eq. 135; *Vattier v. Lytle's Ex'rs,* 6 Ohio, 477, 483; *Williamson v. Jones,* 43 W. Va. 562, 27 S. E. 411; *Burden v. Johnson,* 81 Mo. 318. And see especially *Norman v. Norman,* 26 S. C. 41, 11 S. E. 1096. The sale to *Morrow* being valid and not void, and as *Morrow* got something by his purchase, to wit, the legal title, he will not be relieved on the ground that the title is burdened with this mortgage. *Vattier v. Lytle's Ex'rs,* 6 Ohio, 477, 483; *Poppleton v. Bryan,* 36 Oreg. 69, 58 Pac. 36; *Holtzinger v. Edwards,* 51 Iowa, 383.

For the defendant *Dobeas* there was a brief by *Sheridan & Evans,* attorneys, and *A. L. Sawyer,* of counsel; for the defendant *Morrow* there was a brief by *Sheridan & Evans;* and the cause was argued orally by *W. L. Evans.*

Dodge, J. Dealing first with the appeal of *Dobeas,* the trial court rested its decision upon the principle, supported by a great array of authority, that when an attaching creditor, by amendment or otherwise, includes in his judgment causes of action other than those secured by his attachment, he will ordinarily be deemed to have waived his attachment, as of course he has a right to do, and to have elected to accept merely the lien and rights resulting from the judgment, which in Wisconsin, as in most states, consists of a lien on all the interest of the judgment debtor in real estate existing at the date of docketing the judgment. *Clough v. Monroe,* 34 N. H. 381; *Page v. Jewett,* 46 N. H. 441; *Boyd v. Beville,* 91 Tex. 439, 44 S. W. 287; *Heidel v. Benedict,* 61 Minn. 170, 63 N. W. 490; *Willis v. Crooker,* 1 Pick. 204; *Adams Bank v. Anthony,* 18 Pick. 238; *Freeman v. Creech,* 112 Mass. 180; *Clark v. Foxcroft,* 7 Me. 348; *Whitney v. Brunette,* 15 Wis. 61; *Barth v. Graf,* 101 Wis. 27, 76 N. W. 1100; *Oconto Co. v. Esson,* 112 Wis. 89, 87 N. W. 855. This doctrine unques-

tionably is founded on the idea of protection against fraud
and upon the rule that the acts of the judgment creditor will
be given a construction consistent with innocent intention
rather than fraudulent. This is upon the idea that a judg-
ment for a gross amount which in fact includes sums not se-
cured by an antecedent attachment is upon the record so con-
nected with that attachment as *prima facie* to imply a claim
of lien for the whole amount of the judgment as of the date
of the attachment, and that such record, if it were allowed to
have effect, would necessarily work a fraud, for it would as-
sert liens and rights in property to which the judgment cred-
itor was not entitled, thereby clouding the title, and would
disable holder of the property subject to such lien from the
ordinary means of clearing his property by acts *in pais*. If
a duly docketed judgment includes a sum for which no prior
attachment was secured, the owner of the property cannot, by
paying into court or to the judgment creditor the amount
which was secured by the attachment, discharge the record
lien and clear off the cloud. The setting up of an ostensible
claim of the dignity and publicity of a record judgment, if
false, is in itself fraudulent and oppressive, because it neces-
sarily tends to deceive and to hinder and delay other creditors
and subsequent lienholders. The law, therefore, resting on
the presumption of innocence, assumes that, when an attach-
ing plaintiff elects to enter a judgment inclusive of claims and
causes of action which he could not rightfully claim to be se-
cured by his attachment, he does so with the honest intention
of thereby discharging his attachment lien and declaring that
he rests exclusively upon the judgment. Counsel argues that,
however correct this view with reference to the indistinguish-
able mingling in a judgment of the attachment debt with
others, which characterized *Oconto Co. v. Esson, supra,* yet,
when the judgment can be rendered certain by reference to
the pleadings so that it can be known definitely what amount
of indebtedness secured by the attachment is included in the

judgment, the rule ought not to apply to its full extent, but, that plaintiff should be permitted to enforce the judgment to that extent against any property upon which the attachment lien had fastened which may have passed out of the hands of the judgment debtor at the time of the judgment. Careful examination of all the authorities upon the subject, however, fails to disclose any recognition of such a distinction, while some expressly or impliedly deny it. *Fairfield v. Baldwin,* 12 Pick. 388, 397; *Peirce v. Partridge,* 3 Met. 44, 49; *Clark v. Foxcroft, supra.* When we recall that the injury to the plaintiff results from the presence on public records of the judgment in combination with the prior attachment which together *prima facie* assert a lien for the full amount, and that the same records do not of themselves convey the information necessary to a separation of the amount secured by the attachment from that not so secured, it is apparent that some portion at least of the oppression and injury which the general rule is intended to prevent must still necessarily be suffered by the owner of the property or a subsequent lien thereon. His rights are still hindered by an obstacle which he can remove only at the expense of affirmative proceeding in court. An illustration of the predicament in which the owner of the property is placed is presented in the present case. The judgment was for an amount approximating $1,800, of which some $500 was not entitled to lien prior to plaintiff's mortgage. The execution commanded the sale of exactly the same interest in the property for that additional $500 as it did for the portion of the judgment which might be ascribed to the causes of action named in the affidavit, thereby distinguishing the situation from *Laighton v. Lord,* 29 N. H. 237; *Cutler v. Lang,* 30 Fed. 173, holding that the fraud may be purged by prompt restriction of the judgment and execution to the true amount. Plaintiff could not at any time have availed himself of the convenient statutory methods of clearing the property from the legitimate lien. He could not have paid to the sheriff

such amount and imposed on him the duty to stop the sale. He could not, after the certificate of sale issued, make redemption in the manner which the statute provides as a right to one whose property is subject to such liens; and further, the deed, when issued by the sheriff, would have been an uncertain and indefinite cloud upon the plaintiff's rights.

For these reasons, and in deference to the authorities above cited, the rule of which seems to be fully adopted by this court in the *Oconto Co. Case,* we must conclude that the instant situation presents no exception to the general rule, but must hold that when Tibbs, Hutchings & Co. asserted their right to enter judgment for $1,800, to issue execution, and sell an interest in this property to satisfy said amount, they must be deemed to have intended to assert that right as of the date of the judgment, since a claim as of the earlier date of the attachment would have been a legal fraud—the assertion of a right unsupported by law and injurious to the plaintiff. That a subsequent incumbrancer is entitled to protection by such construction as well as a subsequent attaching plaintiff is declared in *Oconto Co. v. Esson, supra* (p. 103).

Turning now to the appeal of the plaintiffs, the salient facts are that their mortgage was subject to the right of the Friend Company to be paid its judgment out of this real estate. The trial court has, at most, decided that no ground has been shown by the plaintiffs to change this situation and to advance their lien over that which, confessedly both in law and equity, was prior to it. It is entirely clear that through some confusion of mind the formal title conveyed by the sheriff's deed fails to convey the whole interest on which the Friend Company had a judgment lien by aid of its attachment. There can be no doubt that all parties supposed the procedure was such as to accomplish that. The fact that the mortgage debt far exceeded the value of all the property renders certain the absence of any intention to sell or to buy merely some surplus above that debt. We need not decide

whether the evidence discloses such laches or carelessness on the part of those making the sale that a court of equity would not affirmatively intervene in their behalf, for it is the plaintiffs and not the defendants who have invoked the activities of the court and asked it to bring about a result whereby the plaintiffs' interests shall be enlarged without any consideration passing from them and whereby the interest of the judgment creditor shall be practically abolished without the judgment having been paid. This is obviously a situation arousing the duty of a court of equity to impose as a condition of the enforcement of the plaintiffs' rights the recognition and satisfaction of the equitable rights of others. *Hammond v. Erickson,* 135 Wis. 570, 116 N. W. 173. The judgment accords the plaintiffs all that they acquired by their mortgage, and we are satisfied deprives them of nothing to which they were equitably entitled.

*By the Court.*—Judgment affirmed.