THOMAS O. FORD v. CHARLES F. CLEMENT.[1]

June 9, 1897.

Nos. 10,548—(150).

### Homestead—What is Exempt.

As to judgments entered and docketed while that part of G. S. 1878, c. 68, § 1, which provided for a homestead exemption of one "lot," if within the laid-out or platted portion of an incorporated city, town, or village having more than 5,000 inhabitants, was in force, and prior to the amendment, Laws 1891, c. 81, the extent of the judgment lien upon real property in such laid-out or platted portion must be determined by construing the language used in section 1, and not by chapter 81, supra; it being conceded that the amendatory act did not decrease the size of the homestead, and also that by such an amendment any lien rights theretofore acquired by a judgment creditor could not be diminished or injuriously affected.

### Same—Size of "Lot."

The word "lot," as used in that part of G. S. 1878, c. 68, § 1, above referred to, must be construed in accordance with the following rules: First, the mere fact that a tract of land is designated as a "lot" upon the plat is not conclusive; second, that, to be practical, we must be governed, and the homestead must be measured, by the ordinary, prevailing, or standard size of lots in the plat in which the particular tract may be located; and, third, that the tract designated as a lot upon the plat must be materially and substantially larger than the ordinary, prevailing, or standard lots in the same plat, in order to justify a court in holding that it is not all within the spirit and intent of the exemption statute, and wholly exempt.

### Same—How Determined.

What are ordinary, prevailing, or standard lots in size, in any particular plat, is not to be determined by ascertaining the average size of all lots, but by taking into consideration such lots as fairly represent, in area, a majority of the entire number; thus excluding fractions or small lots, as well as lots excessively and unreasonably large when compared with the great bulk.

### Same—Application of Rule.

*Held,* applying the rules above stated to the facts in this case, that the court below did not err when it determined that the tract of land in controversy, 50 feet in width from front to rear, the same being part of a "lot" over 111 feet wide by more than 147 feet in depth as platted, was not exempt as a homestead, under G. S. 1878, c. 68, § 1,

[1] Reported in 71 N. W. 672.

Appeal by defendant from an order of the district court for Hennepin county, Jamison, J., granting plaintiff a new trial. Reversed.

*George B. Young,* for appellant.

The term "lot" as used in the statute was not intended to exempt as a homestead any quantity of land that might be platted and called a lot. By the term "lot," as used in the homestead act, is intended the ordinary, prevailing or average sized lot in the immediate vicinity. Wilson v. Proctor, 28 Minn. 13; Baldwin v. Robinson, 39 Minn. 244; Lundberg v. Sharvey, 46 Minn. 350; In re Smith, 51 Minn. 316; Heidel v. Benedict, 61 Minn. 170. Any other construction placed upon the act will render it unconstitutional.

*Charles J. Tryon,* for respondent.

The homestead law is to be liberally construed without regard to the hardship which may be worked on creditors. Kiewert v. Anderson, 65 Minn. 491; Jacoby v. Parkland, 41 Minn. 227. Equality of area or of value is not required by that law. Cogel v. Mickow, 11 Minn. 354 (475); Lundberg v. Sharvey, 46 Minn. 350; Barton v. Drake, 21 Minn. 299. The exemption of acres side by side with that of lots has been repeatedly recognized. Mintzer v. St. Paul, 45 Minn. 323; In re Smith, 51 Minn. 316; Baldwin v. Robinson, 39 Minn. 244. The tract in question is a lot within the meaning of the statute; at any rate a division by the court is impracticable. Use is immaterial and division of homestead can not be inferred from use. Umland v. Holcombe, 26 Minn. 286; Jacoby v. Parkland, supra; Kelly v. Baker, 10 Minn. 124 (154). The statute gives exemption to a resident, and homesteads in or inherited from married women have been repeatedly recognized. Gowan v. Fountain, 50 Minn. 264; Holbrook v. Wightman, 31 Minn. 168; Eaton v. Robbins, 29 Minn. 327; McCarthy v. Van Der Mey, 42 Minn. 189.

COLLINS, J. This was an action to determine an adverse claim to the north 50 feet, front and rear, of lot 4, in block 11, of George Galpin's addition to Minneapolis. The court below first ordered judgment for defendant on the undisputed facts, and then granted plaintiff's motion for a new trial. In 1892 plaintiff purchased the land in dispute from one Harriet M. Wilson, who had been the

owner for several years, receiving a warranty deed therefor. The defendant's adverse claim is based upon two judgments which he obtained and docketed against Mrs. Wilson in 1889. The question to be decided is one of homestead exemption. The addition was platted in 1873, contains 11 blocks, and these are subdivided into lots of different sizes. All are in a thickly-settled portion of the city, and strictly urban in character. From blocks 1 to 8, inclusive, the lots vary from 54 feet and a fraction to 61 feet and a fraction in width and from 126 1-2 feet to 134 1-3 feet in length. Two of the lots in block 9 are 51 feet and a fraction in width, and the balance are 52 feet wide. Each is 127 feet and a fraction deep. One lot in block 10 is 60 feet and a fraction in width, while six are 54 feet wide, and each is 152 feet and a fraction in depth. Block 11 is somewhat singularly subdivided into 4 lots. Lots 1 and 2 face to the east, each being 88 feet and a fraction wide and 120 feet deep. Lots 3 and 4 face west, the first named being 65 feet, while lot 4, the one in question, adjoining lot 3 on the north, is 111.83 feet in width, both having the same depth, 147.48 feet.

A diagram in the paper book shows the size and location of each lot in blocks 9 and 11, the latter being directly north of the former, with no intervening street. By comparing the area of an ordinary, or prevailing, or what may be called a "standard," lot in size in Galpin's addition, with the area of lot 4, in block 11, we find that the latter contains more than twice the number of square feet; and, if the north 50 feet of lot 4 be excluded from the homestead, the remainder, 61.83 by 147.48 feet, will still exceed in area the lot of ordinary, prevailing, or standard size as lots are platted in this particular addition. And, when speaking of lots of ordinary, prevailing, or standard size, we do not mean that the area of all of the lots should be averaged to ascertain this size, but it should be determined by taking such lots as fairly represent in area a majority of the entire number; thus excluding fractions, or small lots, as well as lots excessively and unreasonably large, when compared with the great bulk. A glance at the figures heretofore given will show that if 50 feet, from front to rear, be cut off from lot 4, there will still remain, unaffected by the judgment liens, a tract of land much larger than either of the 95 lots in the addition, except a sin-

gle lot in block 10 and lots 1, 2, and 3 in block 11. Of these four lots, 1 and 2 are the larger, each containing 10,609 1-5 square feet, while the homestead before mentioned will contain a trifle over 9,118 square feet.

The debtor, Mrs. Wilson, resided, with her family, in a dwelling house upon lot 4 from 1883 down to the day she sold the last parcel, in 1892. Her house and all structures used in connection therewith were located south of the 50-foot strip in controversy. A fence had been maintained upon the north, south, and east lines of the lot, and the 50 feet had been used as a lawn or yard in connection with the dwelling. The defendant concedes that such part of lot 4 as lies south of this 50-foot strip was the homestead of his debtor, and as such was and is exempt from the lien of his judgments. But he contends that as to the 50 feet from front to rear the lien attached, his judgments having been entered and docketed prior to plaintiff's purchase from the judgment debtor. As before stated defendant's judgments were docketed in 1889. Lot 4 had then been owned and occupied by the judgment debtor for about six years, so that if any lien attached it was of the date of the docketing. Minneapolis had then been an incorporated city, with a population largely in excess of 5,000, for many years.

The homestead exemption act then in force, G. S. 1878, c. 68, § 1, exempted from seizure and sale, and consequently from the lien of a judgment against the owner and occupant, "a quantity of land not exceeding in amount one lot, if within the laid-out or platted portion" of such a city. If, therefore, the defendant acquired a lien upon any portion of lot 4 by virtue of the docketing in 1889, the subsequent legislation, Laws 1891, c. 81, amendatory of section 1, and by which the statute was put in its present form, G. S. 1894, § 5521, did not deprive him of such lien. His rights as a judgment creditor were vested, and his lien beyond the power of legislative interference to his injury. The lien which he then secured could not be diminished in extent by increasing, in area or otherwise, the debtor's homestead. So that we are obliged, when considering the question now before us, to dispose of it without reference to the amendment of 1891, for there is no claim or suggestion on the part of counsel that the creditor's

lien has been enlarged, or the debtor's homestead rights dimin-
ished, by the statute last mentioned. The defendant impliedly
admits that any lien he may have covers no more territory than
it did when the judgments were docketed, while the plaintiff must,
concede that, as the grantee of the debtor, his rights are no greater
than were hers at the time of docketing. We are therefore con-
struing G. S. 1878, c. 68, § 1, not G. S. 1894, § 5521.

It has been remarked, in a number of cases before this court
wherein were involved questions of construction of that part of the
homestead act relating to the exemption of property within the
limits of an incorporated town, city, or village having more than
5,000 inhabitants, that the court was greatly embarrassed. In
fact, no construction can be had which is not open to criticism.
The trouble lies in ascertaining what was intended by the word
"lot." The subdivisions known as "lots" not only vary in size in
the same towns, cities, and villages, but oftentimes on the same
plat, a noticeable illustration being found on the one in which is
situated the land in controversy. A large number of the lots, as
laid out on this plat, contain less than 6,500 square feet of ground,
while one contains more than 16,000 square feet; and the mere
fact that the larger tract of land was called a "lot," as were sub-
divisions on the same plat less than two-fifths of its size, does not
increase the area that is exempt. In re Smith, 51 Minn. 316, 53 N.
W. 711. But we are of the opinion that, in a number of decisions
made under the old statute, this court has indicated its views as
to the legislative intent when it used the word "lot" in such statute.

In Wilson v. Proctor, 28 Minn. 13, 8 N. W. 830, it was said that
the word "lot," as used in our statute, is not to be understood as
synonymous with the word "tract" or "parcel," but in the sense of
a city, town, or village lot, according to the plat of the city, town,
or village in which the property was situated. Evidently the court
did not then have in mind the fact that lots might vary in size in
the same place. But this fact did not pass unobserved when the
opinion in Re Smith, supra, was written, for it was said that the
lots the legislature had in mind were those of the ordinary sizes
in platting and laying out lands for urban purposes. And again,
in Lundberg v. Sharvey, 46 Minn. 350, 49 N. W. 60, it was observed,

when discussing the fact that lots varied in size in the same city or town or village, as well as in the same plat, that

"the only practicable rule is, to be governed by the plat in which the land claimed is laid out or platted. It is true in a plat there may be fractional lots or lots materially less [or more] than the ordinary size of lots on the plat, but in such case the ordinary or prevailing size in the addition would probably be taken as the measure."

And in Heidel v. Benedict, 61 Minn. 170, 63 N. W. 490, where the homestead claimed was in a block not subdivided, while other blocks generally were, but was in the platted and laid-out portion of an incorporated city having more than 5,000 inhabitants, and was strictly urban in its character, the court held that the claimant was entitled to hold as a homestead only a tract of land equal in area to the average size of platted lots in that part of the city. An examination of the paper book in that case shows that the lots in that vicinity, and to which th court had reference, were quite uniform in size, and, in so far as can be gathered from the proofs, there were none materially or noticeably larger than the others. There was nothing to suggest that a lot of average size was not a lot of ordinary, prevailing, or standard size. Thus it will be seen from at least two of these decisions that the court has been of the opinion that, in exempting real property situated within the platted or laid-out portion of incorporated towns, cities, and villages having at least 5,000 inhabitants, the legislature used the word "lot" as meaning a lot of the ordinary or prevailing or standard size in the plat within which the exempt property might be located. It did not intend that a lot substantially and materially larger than other lots in the same plat should be exempt, for the inequality and unfairness in such cases would be strikingly apparent.

The learned court below, when granting the motion for a new trial, seems to have tested the facts by what was said in the Heidel case, and to have concluded that, unless the tract claimed was excessively larger than the average lot in the addition, it was exempt; the conclusion being that lot 4 was not. We will not undertake to lay down rules by which the exact size of the homestead may be determined in an incorporated city, town, or village

having a population exceeding 5,000, under the law as it stood when these judgments were docketed, for that would be impossible, but will say, First, the mere fact that a tract is designated as a "lot" on the plat is not conclusive; second, that, to be practical, we must be governed and the homestead must be measured by the ordinary, prevailing, and standard size of lots in the plat in which the particular tract may be located; and, third, that the tract designated as a lot upon the plat must be materially and substantially larger than the ordinary, prevailing, or standard lot in the same plat, in order to justify a court in holding that it is not all within the spirit and intent of the exemption statute, and exempt as a whole. When applied to the facts in any particular case, these rules may not be as certain as they should be, but will serve as a guide in cases of doubt. They seem to be as exact as any which we are capable of formulating under a perplexing statute, and the remedy, for which there was a great necessity for many years, was with the legislature, and was not provided. But it will be understood that we do not lay down these rules as controlling where a majority of the lots in a certain plat are largely excessive in size, as compared with the ordinary, prevailing, or standard lots in the cities, towns, or villages in which the 1878 statute is applicable. Different rules might become necessary in such cases.

We express no opinion as to whether the law of 1891 is constitutional, or whether it has remedied the evil, or has made the subject still more confusing. Our conclusion is that the court below was right when it held that the judgments were liens on the north 50 feet of lot 4, and wrong when it granted plaintiff's motion for a new trial. A lot which contains almost two-fifths more surface than any other in the same plat, and is considerably more than twice as large as any one of 90 lots out of a total of 95, is substantially and materially larger than a lot of the ordinary, prevailing, or standard size. The disproportion is exceedingly apparent, for, when cut down as herein decided, the homestead lot is still larger in area than either of the lots just referred to.

The order is reversed. When the case is remanded, judgment will be entered as originally ordered.