NATIONAL BANK OF THE REPUBLIC OF NEW YORK v. WILLIAM BANHOLZER.[1]

June 21, 1897.

Nos. 10,486—(165).

Exemption—Homestead—Urban Property.

The judgment debtor claims as his homestead, exempt from execution, the whole of the five-acre tract on which he resides. It is within the laid-out and platted portion of St. Paul, a city of over 5,000 inhabitants, but has never been itself platted. *Held*, whether or not the whole is exempt as his homestead depends on whether it is within the rural or urban portion of the city.

Same—Evidence.

*Held*, it does not conclusively appear that it is within the urban portion of the city, and the order of the court below holding the whole exempt is affirmed.

[1] Reported in 71 N. W. 919.

Appeal by plaintiff from an order of the district court for Ramsey county, Bunn, J., denying its application for the appointment of a receiver in supplementary proceedings.   Affirmed.

*Morphy, Ewing & Gilbert,* for appellant.

*W. P. Westfall* and *F. G. B. Woodruff,* for respondent.

CANTY, J.

The plaintiff is a judgment creditor of defendant.   Execution was returned unsatisfied on the judgment, and supplementary proceedings were instituted against defendant, who, on the examination, disclosed no.property except a five-acre tract of land, on which he and his family reside, and which he claims as his homestead.   On the report of the referee, the plaintiff moved for the appointment of a receiver, and appeals from an order denying the motion.

The only question discussed on this appeal is whether or not the judgment debtor is entitled to hold as his homestead, exempt from execution, the whole of the tract in question.   This tract is situated within the corporate limits of the city of St. Paul, a city of more than 5,000 inhabitants, and has never been platted, but is surrounded for a considerable distance with lands that have been platted into city lots and blocks, except that adjoining it on the east is an acre of unplatted land owned by defendant's father, and immediately adjacent thereto is a tract occupied by railroad car shops, which last-named tract does not appear to be platted.   The five-acre tract in question is on the north bank of the Mississippi river 2½ or 3 miles west of the Wabasha street bridge, and upon it there is situated a brewery, boiler house, ice house, store house, stable, carriage house, and two dwelling houses, in one of which the defendant resides.

In this state, the value of the homestead and the uses to which it is put are immaterial, so long as it is the place of residence of the debtor.   Kelly v. Baker, 10 Minn. 124 (154); Umland v. Holcombe, 26 Minn. 286, 3 N. W. 341; Jacoby v. Parkland, 41 Minn. 227, 43 N. W. 52.   The legislature has placed upon the homestead merely the limit of area.   G. S. 1894, § 5521 provides:

"A homestead consisting of any quantity of land not exceeding eighty acres   *   *   *   not included in the laid-out or platted portion of any incorporated town, city or village, or instead thereof, *   *   *   a quantity of land not exceeding in amount one lot   *   *   *

if within the laid-out or platted portion of any incorporated town, city or village, having over 5,000 inhabitants, or one half acre if within the laid-out or platted portion of any incorporated town, city or village, having less than 5,000 inhabitants,  *   *   *   shall not be subject to attachment."  *   *   *

This court has struggled with this statute ever since its passage in 1875, and has made many attempts to construe it, but was finally forced to adopt the distinction between rural and urban as the controlling principle by which to determine the area or size of the homestead. In order to avoid the most extraordinary and absurd results,—results which the legislature never intended,—this court was compelled to hold that the mere matter of platting within the corporate limits is not controlling. The boundaries of cities and villages have been extended so as to include large tracts of agricultural land, and within those boundaries the boomer and speculator has platted the cow pasture and the virgin forest. Again, pieces of land and large and small angles and remnants have been left between the different plats in the laid-out and platted portion of the city, even in the very business center. Again, lots platted together and lying side by side, are often most unequal in size, one being several times larger than another.

The first case in which this court held the mere matter of platting within the corporate limits not to be controlling, and laid down, as controlling, the distinction between the rural and the urban portions of the city, was In re Smith, 51 Minn. 316, 53 N. W. 711. The city of New Ulm had in an early day been laid out and·platted. The central part of the tract was platted into lots of the ordinary size of city lots. The lots around the outer edge of the plat were much larger. The one in question, containing four acres, was, with all other similar lots in that part of the city, used for agricultural purposes. This court held that it was not a city lot, but a mere subdivision of agricultural land.

The next case in which this court laid down the distinction between the rural and the urban portion of the city is Heidel v. Benedict, 61 Minn. 170, 63 N. W. 490. The homestead claimed was within the corporate limits of St. Paul, and had, with the surrounding property, been platted, but the particular block in question had never been subdivided into lots. The debtor owned nearly one-half

of this block, and resided on the same. The property was strictly urban in character, and the court, in order to carry out the intention of the legislature, completed the platting of the land, by subdividing it into lots, and allowing the debtor, as his homestead, only the amount of one lot. This, in effect, is what was done in the case. It is said in the opinion, at page 172:

"It is not to be presumed that the legislature intended that where a part of the platted portion of an incorporated city, strictly urban in character, was not subdivided into lots on the plat, a party might claim an exemption to the extent of acres; while his neighbor across the street, residing on a block of exactly the same kind of property, but subdivided on the plat into lots, could only claim two or three thousand square feet."

Of course, if this block was out in the rural portion of the city, the court would never have attempted thus to complete the platting as a means of determining the area of the homestead, but would have held the debtor entitled to the whole tract so owned by him, although the other blocks in the addition were all subdivided into lots.

In the case of Ford v. Clement, 68 Minn. 484, 71 N. W. 672, the judgment debtor claimed, as his homestead, a lot more than twice the ordinary size of the lots in the addition. The lot was in a portion of the city of Minneapolis which was thickly settled and strictly urban in character. The court held that he was only entitled to a lot of the ordinary size, and, in effect, replatted the land, for the purpose of determining the proper area of the homestead. Of course, if the property was in the rural portion of the city, the land would not be thus replatted, but the debtor would be entitled to claim the whole lot as his homestead.

In the case of Kiewert v. Anderson, 65 Minn. 491, 67 N. W. 1031, the debtor was the owner of four large lots, which, with the surrounding land, had been platted, but, after he purchased the same, he had the plat and the street and alleys vacated as to those three blocks, but all of the surrounding land, for a considerable distance, was still platted into city lots. The four lots in question contained about 15 acres, and were in West St. Paul. He resided on the land after the plat was so vacated, and we held that he was entitled to hold the whole as his homestead, because it was in the rural portion of the city.

But suppose some man should buy 80 acres of the heart of one of our larger cities at a cost of ten million dollars, have all the plats vacated, reside in one of the buildings thereon, and claim the whole as his homestead. Would his claim be sustained by this court? To do so after holding as we have in Heidel v. Benedict and Ford v. Clement would be to strain at a gnat, and swallow, not a camel, but a mountain. But what is the difference whether he claims as his homestead 80 acres of the heart of the city on which the plats have been vacated, or claims 80 acres in the heart of the city which have never been platted? In either case the 80 acres is distinctively urban property, and it is immaterial whether he uses it for every urban purpose, or permits all of it but the spot on which his residence stands to lie waste, or uses it for agricultural purposes. As we have seen, it is immaterial to what use he puts the property, so long as he resides upon it. If the debtor can claim as his homestead one acre or five acres in the heart of the city, he can claim 80 acres. From this conclusion there is no escape.

It ought not to require any argument to show that the legislature never intended any such unequal and extraordinary results as such an interpretation of the statute would work out. Neither does the letter of the statute require any such interpretation, and the inequality in the operation of our homestead law is sufficiently great, without increasing that inequality by any unnecessary interpretation. Land "not included in the laid-out or platted portion" of the city does not mean unplatted pieces lying between the plats in the platted, urban portion of the city. The word "portion," as thus used in the statute, means that platted, general, or grand division of the city which is urban in its character, not excluding every piece or remnant of unplatted land which may lie within such portion. The term used is not "platted portions." The statute contemplates but one platted portion of the city, not several; and all such unplatted pieces or remnants lying in such portion are included within it. This is the proper interpretation of the statute. In order to carry out the intention of the legislature, it was, as we have seen, also necessary to hold that "platted portion" means that platted portion which is urban in its character.

Let us now apply these principles to the case at bar. It appears that the land surrounding the five-acre tract in question is all plat-

ted except the other small pieces above referred to, but it does not conclusively appear that this portion of the city, generally, is urban in character. A plat was introduced in evidence, which shows a very considerable number of houses for three blocks west and four blocks north of this five-acre tract. There is also a brewery on this tract, and railroad car shops to the northeast. But it does not appear that there is anything else urban in character for miles around. It is fair to infer from the evidence that the tract is $2\frac{1}{2}$ or 3 miles from the business center of the city. The existence of a collection of houses, with a factory or a shop or two, far out in the rural or agricultural portion of the city, is very common. In such cases, as well as where the homestead claimed is on the border line between the rural and urban portions of the city, the character of the homestead as rural or urban is a question of fact to be determined in each case. The memorandum of the judge is not made a part of the order denying the motion for a receiver, and we must hold that the order of the court in this case amounts to a finding that the tract here in question is rural in character, and we cannot say that the finding is against the evidence.

This disposes of the case, and the order appealed from is affirmed.

START, C. J.

I concur in the result, but not in the proposition that the test whether the whole of the land in question is the homestead of respondent is whether it is in the rural or urban portion of the city of St. Paul.

The statutory test, as repeatedly held by this court, is whether the tract is itself included within, and is a part of, that portion of the municipality which is either laid out or platted. Baldwin v. Robinson, 39 Minn. 244, 39 N. W. 321; Mintzer v. St. Paul, 45 Minn. 323, 47 N. W. 973. This construction has become a rule of property, and, whether it is right or wrong, it ought now to be followed. The decision of the court in the case at bar overrules these decisions, and substitutes a new and uncertain test for determining the area of the homestead in place of the statutory test. Who shall say whether a parcel of land within the platted portion of a municipality is rural or urban, and by what certain rule will he make answer? The terms are relative.

There has been no departure by the court from the Baldwin and Mintzer cases, except, possibly, in a single instance. In Heidel v. Benedict, 61 Minn. 172, 63 N. W. 490, and Ford v. Clement, 68 Minn. 484, 71 N. W. 672, the land in question in each case was itself within and a part of the plat. The suggested exception is the case of In re Smith, 51 Minn. 316, 53 N. W. 711, in which it was held that, where an addition was shown by the plat to have been divided into lots for rural purposes, the homestead limit was that fixed for rural, rather than for urban, districts. I concede that the logic of the Smith case is a departure from the Mintzer case, but there is no suggestion in the opinion in the Smith case of a purpose to overrule the Mintzer case, which is not even referred to, although cited by counsel.

I am for affirmance, upon the ground, which was the basis of the trial court's decision, that this case is ruled by the Mintzer case.