## In re Terrance J. BECKER and Bernadette Jeanette Becker, Debtors.

### Bankruptcy No. 96–35680.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Sept. 9, 1997.

---

Barbara J. May, Arden Hills, MN, for Debtor.

Michael S. Dietz, Rochester, MN, trustee.

## ORDER OVERRULING TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF HOMESTEAD OBJECTION

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court for hearing on the Trustee's objection to the Debtors' claim of homestead objection. Trustee Michael S. Dietz appeared on behalf of the bankruptcy estate. The Debtors appeared by their attorney, Barbara J. May. Upon the Trustee's objection, the Debtors' responses thereto, and the memoranda and arguments submitted by counsel, the Court makes the following order.

The Debtors filed a voluntary petition for relief under Chapter 7 on October 7, 1996. Their Schedule A consisted of an entry for an interest in real estate they described as "homestead located at 901 So. Winnebago St., Caledonia, Houston Co., MN." They gave a complicated legal description by metes and bounds for this property, and noted that the parcel contained 58 acres. They scheduled the current market value of their interest in it as $110,000.00, with the "amount of secured claim" stated as $40,-000.00. In their Schedule C, they claimed an exemption for their interest in this property pursuant to MINN.STAT. §§ 510.01–510.02.

They valued the exempted interest at $70,-000.00.

MINN.STAT. § 510.01 provides, in pertinent part:

The house owned and occupied by the debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing ...

The limitations on the homestead right are then set forth in MINN.STAT. § 510.02. In pertinent part, it provides:

The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If the homestead is within the laid out or platted portion of a city, its area must not exceed one-half of an acre ...

The Trustee timely objected to the Debtors' claim of exemption, stating the basis as follows:

The Debtors testified at the § 341 meeting that the homestead is within the laid out or platted portion of the City of Caledonia and consists of 58 acres. This exceeds the amount of land exempt under the statute.

The issue at bar is whether, as a matter of fact and law, the real estate in question is "included in the laid out or platted portion of [a] city." The parties' various submissions[1] establish a number of relevant facts:

1. The 58-acre tract is entirely within the city limits of Caledonia, Minnesota.

2. The Debtors have lived on the property for 35 years. Their dwelling place is a modest two-story house on one side of the

1. These submissions consist of an affidavit by the Trustee, farming in a plat map and dedication from the land records for Houston County; an affidavit by the Trustee's paralegal assistant, farming in photographs and a videotape of the subject real estate and surrounding properties; the affidavits of the Houston County Treasurer, the Acting Assessor for Houston County, and the Clerk–Administrator for the City of Caledonia; an affidavit by Timothy A. Murphy, an attorney in Caledonia, attesting to the results of his search of the plat records for Houston County; and the Debtors' verification of the fact averments in their counsel's supplemental memorandum, filed after the bulk of the other evidentiary materials but before the final hearing on the Trustee's objection. The record does *not* include any of the fact averments in the Debtors' original response; that paper was not accompanied by a verification that would give those statements the status of evidence.

tract. Behind the house are a barn, of traditional lines, and several smaller outbuildings. Behind those buildings, in turn, the tract consists of open land, which the Debtors use for corn production and the pasturing of horses.

3. The Debtors' dwelling is in the west side of Winnebago Street, which runs north and south. Immediately to the south of the Debtors' dwelling, Winnebago Street is met by Bush street, on the east.

4. The 58–acre tract itself is not platted. It is legally described by several pages of metes-and-bounds language.

5. To the north of the Debtors' dwelling, along both sides of Winnebago Street, are homes located on residential lots. The size lots appear to be of a standard in any latter-day suburban development.

6. To the east of the Debtors' dwelling just across Winnebago Street and along Bush Street, lies the residential subdivision of Sunnyview Estates. It is platted. On its lots are a number of homes.

7. The Debtors themselves executed the dedication for the plat of Sunnyview Estates, on April 27, 1981. They apparently developed the subdivision out of a portion of their then-larger farm.

8. When the Debtors purchased their property 35 years ago, "they had no neighbors or developments anywhere near them." All of the homes to the north, northeast, and southeast of the Debtors' dwelling appear to be of substantially later construction than the Debtors' dwelling. This residential development accompanied the establishment of new businesses and the expansion of government activity in Caledonia over the last several decades.

9. The Debtors' neighbors to the south and west continue to use their larger tracts of land to grow corn and hay.

10. The City of Caledonia has zoned the areas on which the surrounding houses are located, as well as the portion of the Debtors' tract on which their dwelling is located, as

"R–1," the designation for "suburban residential." That portion of the 58–acre tract behind the Debtors' house is zoned "AG," for "agricultural."

11. The location of the city limits of Caledonia has not changed since it was fixed in 1878.

The language of MINN.STAT. § 510.02 that applies here was placed on the statute books well over a century ago. It vexed the Minnesota Supreme Court in a number of early cases. *See Baldwin v. Robinson,* 39 Minn. 244, 39 N.W. 321 (1888) (noting that subject provision was "certainly beyond any construction which will prove wholly satisfactory or not subject to doubt and stricture ...."); *Mintzer v. St. Paul Trust Co.,* 45 Minn. 323, 47 N.W. 973, 974 (1891) (noting that in *Baldwin v. Robinson* "it was truthfully said that the section is beyond any satisfactory construction ...."); *Smith's Estate v. Schubert,* 51 Minn. 316, 53 N.W. 711 (1892) (Wm. Mitchell, J.) ("This case illustrates the embarrassments that are liable to arise in construing the very crude provisions of our homestead exemption law ...."); *Heidel v. Benedict,* 61 Minn. 170, 63 N.W. 490 (1895) (Wm. Mitchell, J.) ("It is almost impossible to construe the crude provisions of our homestead law without sometimes resorting to what might seem to be judicial legislation ...."); *Ford v. Clement,* 68 Minn. 484, 71 N.W. 672 (1897)("... no construction can be had which is not open to criticism ...."); *Nat'l Bank of the Republic of New York v. Banholzer,* 69 Minn. 24, 71 N.W. 919, 921 (1897) (Start, C.J., *concurring* ).

As if to make these pronouncements a self-fulfilling prophecy, a quick reading of these decisions leaves one confused as to how to apply them to facts like those at bar. Abstracting and organizing their precepts, however, dispels the uncertainty:

■ 1. Where a debtor has established an entitlement to a homestead exemption to the extent of the larger rural measure, his claim cannot be defeated by the later acts of other persons in laying out and platting adjoining lands. *Baldwin v. Robinson,* 39 N.W. at 323.[2]

**2.** A homestead right so established cannot be defeated by legislative action to extend the boundaries of a city, either. *Id.*

2. To be sure, "[t]he owner of the homestead may plat *it* into lots and blocks, if he chooses, and thus voluntarily reduce it to a half acre ...," thereby subjecting his exemption to the smaller urban measure. *Id.* (emphasis added).

3. To be "within the laid out or platted portion of a city," a tract of land

> must *itself* be laid out or platted, ... a part and parcel of that portion of the municipality which is either laid out or platted, and not merely a tract of ground not subdivided in any manner, but which may be surrounded in whole or in part by tracts which have been laid out or platted by other parties.

*Mintzer v. St. Paul Trust Co.,* 47 N.W. at 974 (emphasis added).

4. The smaller urban measure of the homestead exemption can be imposed on

> only ... that portion [of a city] which is laid out and platted for city or urban purposes, and not to land which is merely laid out for agricultural or rural purposes, or, in other words, merely subdivided into small farms or farm lots.

*Smith's Estate v. Schubert,* 53 N.W. at 712. In this regard, the size of the lots and the plan of the plat can be used to show whether larger tracts in a subdivision "were designed for agricultural, and not urban, uses." *Id.*

5. A tract within the limits of a city, surrounded by laid-out city lots but as to which itself the plat had been judicially vacated, can be claimed as homestead in the larger rural measure as long as it is rural *"in its character"*—that is, when it is used for rural and agricultural purposes. *Kiewert v. Anderson,* 65 Minn. 491, 67 N.W. 1031, 1033 (1896) (emphasis added).

6. "[W]here the homestead claimed is on the border between the rural and urban portions of the city, the character of the homestead as rural or urban is a question of fact to be determined in each case." *Nat'l Bank v. Banholzer,* 71 N.W. at 920–921.

With the governing law recognized as such, the Debtors win. They established their homestead right on a tract even larger than the current parcel, years before the developed portion of Caledonia grew out to touch their property. Even now, laid out and platted lands do not surround the Debtors' property; their neighbors on two sides live in houses indistinguishable from latter-day suburban tract homes anywhere in the Midwest, but their neighbors on the other two sides are still farming like the Debtors have for three-plus decades.

The Trustee makes much of the fact that the Debtors themselves contributed to the urbanization of their surroundings, by severing a portion of their land and creating the Sunnyview Estates subdivision. As he would have it, this act deprived them of the protection of *Baldwin v. Robinson's* general rule, and amounted to a voluntary reduction of their homestead right. The argument is not completely out of bounds, but it errs in not recognizing that all of the decisions premise the extent of the homestead right on the character and survey status *of the subject parcel,* and not of adjoining ones. While *Baldwin* exposes an owner-subdivider to the reduction of the homestead right, it clearly limits such a divestment to the situation where the owner retains personal occupancy of a lot or lots within the plat or subdivision he has created from a larger parcel. Under *Baldwin,* this act evidences a choice to reside on property impressed with urban character by its survey attributes; the decision's phrasing is such, however, that only this situation relegates an owner-subdivider to the smaller measure of homestead. The broader and more basic act of platting and subdividing a portion of one's farm does not, if the owner continues to occupy an unplatted remainder and to use it for purposes of a rural character.

Sixteen years ago, then, the Debtors apparently enriched themselves by splitting off a portion of their farm, developing it, and bringing the town's environment to their doorstep. However, they left the balance of their "home place" in the form of the "acre property," 47 N.W. at 974, that was found in *Mintzer* to retain its homestead character under comparable circumstances. That remaining portion is itself neither laid out nor platted; it is a tract of some size, used consistently with its agricultural zoning in

activities characteristic of rural areas and not of the developed and more densely populated portions of cities smaller or larger. The principles of *Mintzer, Smith's Estate,* and *Kiewert,* then, reinforce the result suggested by *Baldwin v. Robinson.*

This property did indeed become part of "the border between the rural and urban portions of" the city of Caledonia, and in part by the Debtors' actions. However, nothing that the Debtors or anyone else did during the time of that transition stripped it of the more extensive homestead protection it gained through the Debtors' initial acquisition and occupancy. Accordingly,

IT IS HEREBY ORDERED:

1. The Trustee's objection is overruled.

2. The Debtors' claim of exemption for the Houston County, Minnesota real estate described in their Schedule C is allowed.