**United States Bankruptcy Appellate Panel**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-6082 MN

_____

In re:   Terrance J. and Bernadette J.        *
    Becker                                     *
                                               *
    Debtors.                                   *
                                               *
Michael S. Dietz,                              *  Appeal from the United States
                                               *  Bankruptcy Court for the
    Appellant,                                 *  District of Minnesota
                                               *
        v.                                     *
                                               *
Terrance J. and Bernadette J. Becker,          *
                                               *
    Appellees.                                 *

_____

Submitted: December 16, 1997
Filed:  January 16, 1998

_____

Before KOGER, Chief Judge, WILLIAM A. HILL, and SCOTT,
Bankruptcy Judges.

_____

SCOTT, Bankruptcy Judge.

The chapter 7 trustee appeals a determination by the bankruptcy court[1] that the debtors, whose rural-use acreage is abutted on two sides by suburban residential homes, are entitled to a rural homestead exemption under Minnesota law. We affirm.

The debtors filed a voluntary chapter 7 bankruptcy case on October 7, 1997, at which time they claimed a rural homestead exemption in the 58 acres upon which they live, pursuant to Minn. Stat. §§ 510.01, 510-2. The debtors claim that since their acreage is rural in nature they are entitled to exempt the entire 58 acres. The trustee asserts that the nature of the locale has sufficiently changed, in large part due to the debtors' own activities in developing the area, that they are not entitled to a rural homestead exemption, but are instead limited to the one-half acre allowed under section 510.02.

The debtors' acreage, although not platted, is within the city limits of Caledonia, Minnesota. When the debtors purchased their home thirty-five years prior to the bankruptcy case, the surrounding area was rural. The expansion of the city, through the establishment of new businesses and government activity, has changed the nature of the neighborhood. From the debtors' front door, the view is suburban in nature, with residences abutting the property where the dwelling is situated, to the north and east along both sides of the adjoining streets. The city has zoned these areas, including the area upon which the debtors' house is located, for suburban residential development. The debtors developed the neighborhood to the east from a portion of their farm.

---

[1]The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

From the back of the debtors' dwelling, one views a rural setting: The barn and outbuildings are in view, as is open land which is used for growing an annual corn crop and for grazing horses.  The debtors' acreage behind the house is zoned for agricultural use.  The debtors' neighbors to the south and west also use their land to grow corn and hay.

Minnesota statutes provide for a homestead exemption as follows:

> The house owned and occupied by the debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing....

Minn. Stat. § 510.01. The area of the homestead is limited as follows:

> The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If the homestead is within the laid out or platted portion of a city, its area must not exceed one half of an acre. The value of the homestead exemption, whether the exemption is claimed jointly or individually, may not exceed $100,000 or, if the homestead is used primarily for agricultural purposes, $500,000, exclusive of the limitations set forth in section 510.05.

Minn. Stat. § 510.02. The language and application of this statute has long vexed the Minnesota courts.[2] The Minnesota Supreme Court made its most recent in-depth pronouncement on the construction of this statute in 1897, in <u>National Bank of the Republic of New York v. Banholzer</u>, 69 Minn. 24, 71 N.W. 919 (1897), wherein it established a method of analysis for determining the entitlement to the amount for the homestead. The court determined that the "platted portion" of any city

---

[2]Indeed, the statute has been characterized as "beyond any satisfactory construction," <u>Mintzer v. St. Paul Trust co.</u>, 45 Minn. 323, 324, 47 N.W. 973, 974 (1891), and even "crude," <u>Smith's Estate v. Schubert</u>, 51 Minn. 316, 316, 53 N.W. 711, 711 (1892).

4

included unplatted pieces within the city. "Platted portion" was determined to mean "platted portion which is urban in character." Thus, the court scrutinized not only the particular land in question, but also required examination of the character of the surrounding area. <u>See</u> <u>Banholzer</u>, 69 Minn. at 28, 71 N.W. at 920. The method of analysis is made clear upon application of that court's rule to the facts of <u>Banholzer</u>.

In applying the principles to the facts, the Minnesota Supreme Court first looked to the character of the land surrounding the tract in question. It appears from the analysis that, had an entire area in question been conclusively urban in character, the homestead would have been limited in that manner. See id. However, in Banholzer, as in this case, the surrounding area was not conclusively urban in character such that the court was compelled to make a further inquiry. Since the the homestead claimed was "on the border line between the rural and urban portions of the city," the court then looked to whether "the character of the homestead [w]as rural or urban" to determine the amount of the allowable exemption.[3]

Thus, in making the determination, the Minnesota Supreme Court created a two-pronged test. If, as a factual matter, the surrounding area is conclusively urban in character, the claimants are limited to the one-half acre permitted under section 510.01. If the surrounding area is conclusively rural, the claimants are permitted to exempt up to 160 acres. However, if the surrounding area is not conclusively rural or urban, a second factual determination must be made as to the character of the homestead itself. Despite the passage of time since the pronouncement of this test, the Minnesota Supreme Court has adhered to this test in subsequent cases and has

---

[3]Neither the statute nor the case law supports the trustee's assertion that the factual analysis should include only the house and not the "incidental" pastureland. Indeed, the homestead exemption found in section 510.01 provides that it incorporates up to 160 acres. In analyzing the entitlement to the homestead, we look to the entirety of the property claimed, not merely the house and the limited amount of land upon which it is situated. Stauning v. Crookston Mercantile Co., 134 Minn. 478, 159 N.W. 788 (1916); Brixius v. Reimringer, 101 Minn. 347, 348, 112 N.W. 273, 273 (1907)("The essential thing to constitute a quantity of land within the homestead law is that it shall be occupied and cultivated as one piece or parcel of land, on some part of which is located the residence." (emphasis added)).

6

applied this analysis in the context of tax statutes containing similar language.  <u>See, e.g.</u>, <u>State ex rel. Chase v. Armson</u>, 135 Minn. 205, 160 N.W. 498 (1916).  <u>See also</u> <u>In re De Griselles</u>, 185 Minn. 495, 241 N.W. 590 (1932); <u>Mead v. Marsh</u>, 74 Minn. 268, 77 N.W. 138 (1898).

In this case, the trial court made virtually the same findings as found in Banholzer.[4] The bankruptcy court concluded that the surrounding area is both urban and rural in character: to the south and west, the land use is strictly agricultural; to the east and north, it is residential and suburban. The trial court also determined that the character of the debtors' land is agricultural such that the debtors are entitled to exempt the entire 58 acres. The record clearly supports these factual findings such that the conclusions are not clearly erroneous. As in Banholzer, "this disposes of the case." Banholzer, 69 Minn. at 29, 71 N.W. at 921.

This is not an inequitable result. The debtors in this instance retain the homestead expressly afforded them by Minnesota law, in the same manner as their neighbors to the south and west who also use their land for agricultural purposes. The fact that their neighbors to the east and north reside on smaller, suburban lots and are thereby limited to a one-half acre homestead is not, without more, unfair. The potential for the "unequal and extraordinary" result appears when, as discussed and resolved in Banholzer, the land is "in the heart of the city," whether used for urban or agricultural purposes. Banholzer, 69 Minn. at 28, 71 N.W. at 920.

While it is true that the debtors contributed to the increasingly urban quality of the area in which they live, they did not do so to such an extent as to render the area

[4]The trustee argues that the bankruptcy court erroneously looked only to the subject property instead of the surrounding area. However, inasmuch as the bankruptcy court made all of the appropriate factual findings, not merely findings as to the character of the subject property, its result should be affirmed. Cf. Allstate Fin. Corp. v. United States, 109 F.3d 1331, 1333 (8th Cir. 1997)(appellate court may affirm on any basis supported by the record). The bankruptcy court first concluded that the subject parcel was "between" urban and rural properties. Then, as in Banholzer, the bankruptcy court determined that the particular parcel was used for agricultural purposes.

irrefutably, or even predominantly, urban.  They reside in an area of mixed usage, both developed and agricultural, and, indeed, significant agricultural usage of the surrounding lands exists.  The rural qualities which imbue the area have yet to be erased from the locale.   The fact that the debtors contributed to the dilution of these rural qualities is beside the point.  The debtors'

claim a homestead exemption under the generous provisions of section 510.01 and, under <u>Banholzer</u>, their claim must be sustained.

A true copy.

    Attest:

        CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT.