Harlan BAUMANN, et al., Appellants,

v.

CHASKA BUILDING CENTER,
INC., Respondent,

C.H. Robinson Company,
et al., Defendants.

No. CX–00–1208.

Court of Appeals of Minnesota.

Jan. 23, 2001.

Eric Robert Heiberg, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for appellants.

Michael Joseph Orme, Orme & Associates, Eagan, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge, SHUMAKER, Judge, and HOLTAN, Judge.

## OPINION

HARVEY A. HOLTAN, Judge *

Appellants Harlan and Cheryl Baumann appeal the district court's summary judgment in favor of respondent Chaska Building Center. The district court concluded that because the market value of appellants' home exceeded $200,000, the homestead exemption protected only $200,000 of its market value. Appellants claim the homestead exemption applies to their equity in the property, not its market value. By notice of review, respondent challenges the portion of the summary judgment ruling that because appellants' property is located outside a laid-out or platted portion of a city, the property qualifies for a homestead exemption under Minn.Stat. § 510.02 (1998). We reverse and remand.

## FACTS

Appellants Harlan and Cheryl Baumann owned 3.9 acres of real property and occupied it as their homestead. The property is not located within the laid-out or platted portion of any city and is not within the city limits of any city. The county's 1999 real-estate valuation notice classified the property as "residential homestead."

In June 1998, respondent Chaska Building Center, Inc. sued appellant Harlan Baumann based on a personal guaranty he executed on behalf of Ahlquist Corporation, d/b/a Gunnard Company (Gunnard). The guaranty was for debts Gunnard owed to respondent. In July 1998, respondent obtained a default judgment against Gunnard and appellant Harlan for $13,647.60. The judgment was later modified and increased to $15,049.13. After entry of the judgment, Gunnard became insolvent.

In 1999, appellants sold their property to David and Connie Rikke for $370,000 and used all of the sale proceeds to pay off three mortgages on the property. The mortgages totaled more than the property's sale price. Wanting to remove the

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

cloud on the title caused by the 1998 default judgment, appellants sought a declaratory judgment that the default judgment was unenforceable against their homestead. On summary judgment, the district court ruled that the geographic limitation contained in the homestead-exemption statute, Minn.Stat. § 510.02 (1998), did not apply to appellants' property because the property was outside a laid-out or platted portion of a city. The district court also ruled that because the property's market value exceeded $200,000, the homestead exemption applied to only the first $200,000 of that market value.

## ISSUES

I. Does the homestead-exemption statute, Minn.Stat. § 510.02 (1998), apply to the market value of the property or the value of the debtor's equity in the property?

II. Did the district court err in concluding that because appellants' property is located outside a laid-out or platted portion of a city, the amount of property exempted may exceed that allowed if the property was in the laid-out or platted portion of a city?

## ANALYSIS

On appeal from a summary judgment where the parties agree that the material facts are not in dispute, the only questions before this court are questions of law. *Reads Landing Campers Ass'n, Inc. v. Township of Pepin,* 546 N.W.2d 10, 13 (Minn.1996). The interpretation of statutes is a question of law which we review de novo. *Boutin v. LaFleur,* 591 N.W.2d 711, 714 (Minn.1999) (citation omitted).

## I.

Appellants challenge the district court's ruling that the homestead-exemption statute, Minn.Stat. § 510.02 (1998), protects $200,000 of the market "value" of their property. They allege that the word "value" as used in the statute is ambiguous and applies to the debtor's equity in the

homestead rather than the market value of the property. A statute is ambiguous if "it is reasonably susceptible to more than one interpretation." *Astleford Equip. Co., Inc. v. Navistar Int'l Transp. Corp.,* 611 N.W.2d 33, 37 (Minn.App.2000) (citation omitted). If a statute is ambiguous, courts, in construing a statute, may examine related statutes and use the statute's legislative history to determine how the ambiguous language should be read. *See Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 385–86 (Minn.1999) (illustrating proper analysis of a statute). Here, section 510.02 states:

> The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If the homestead is within the laid out or platted portion of a city, its area must not exceed one-half of an acre. *The value of the homestead exemption,* whether the exemption is claimed jointly or individually, *may not exceed $200,000* or, if the homestead is used primarily for agricultural purposes, $500,000, exclusive of the limitations set forth in section 510.05.

*Id.* (emphasis added). Section 510.02 refers to "[t]he value of the homestead exemption." The phrase "homestead exemption" is not otherwise defined and its "value" could be read to refer to the market value of the property used as a homestead or to only the debtor's equity therein. Because the word "value" has an ascertainable but neutral meaning, it does not suggest a preference for one reading of "value of the homestead exemption" over the other. Therefore, we conclude that section 510.02 is ambiguous under *Astleford.* The district court construed the statute to refer to the property's market value.

### A. Related Statutes

"Statutory construction is a question of law subject to de novo review." *See Astleford,* 611 N.W.2d at 37 (citing *Wynkoop v. Carpenter,* 574 N.W.2d 422,

425 (Minn.1998)). A statute should be interpreted, whenever possible, to give effect to all of its provisions, and "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral,* 598 N.W.2d at 384 (citing *Owens v. Federated Mut. Implement & Hardware Ins. Co.,* 328 N.W.2d 162, 164 (Minn.1983)). "Various provisions of the same statute must be interpreted in light of each other." *Baker v. Ploetz,* 616 N.W.2d 263, 269 (Minn.2000) (citation omitted). Courts should also construe a statute to avoid absurd and unjust consequences. *Id.* (citation omitted).

Respondent claims that Minn.Stat. § 550.175 (1998), the execution statute, supports the determination that "value," as used in section 510.02, refers to "fair market value" because the execution statute repeatedly refers to "the value of the property" or "the value of the homestead," but does not refer to the owner's equity in the property or homestead. *See* Minn.Stat. § 550.175, subd. 3 ("The debtor must designate the legal description of the homestead property to be sold separately and the debtor's estimate of *the value of the property* ") (emphasis added); *id.,* subd. 4(b) ("If the executing creditor is dissatisfied with the homestead property designation or the debtor's *valuation of the property* * * * the executing creditor is entitled *to a court approved designation of the homestead and a court determination of value* ") (emphasis added); *id.,* subd. 4(d) ("If the court determines that *the property claimed as a homestead exceeds in value* the amount of the homestead exemption * * * the court shall order the sale of the entire property, including the designated homestead") (emphasis added). But, while section 550.175, subdivision 3, outlines a procedure for estimating "the value of the property" and subdivision 4(b) allows a creditor to challenge that valuation, neither provision equates the "value" of the property with the "value" of the exemption. Both provisions contemplate that valuing the property is but one step in the process of determining

whether the limits on the homestead exemption have been exceeded, i.e., whether the total value of the property, minus any pre-existing encumbrance, exceeds $200,000.

Specifically, sales of a homestead under execution are accomplished by bid and the bids will reflect any prior encumbrance or encumbrances on the property. Therefore, the sale price of a homestead under execution will reflect the property's equity. No bid on a homestead under execution can be accepted unless the bid "exceeds the amount of the homestead exemption." Minn.Stat. § 550.175, subd. 4(e). Thus, "[i]f no bid exceeds the exemption, the homestead is exempt." *Id.* Alternatively stated: if there is less equity in a homestead than is protected by the homestead-exemption statute, all of that equity is exempt. Similarly, from the proceeds of a sale of a homestead sold under execution, "the court shall pay the debtor the amount of the homestead exemption" and apply the remainder on the execution. Minn. Stat. § 550.175, subd. 4(d). Thus, if there is more equity in a homestead than is protected by the homestead-exemption statute, the full amount protected by the statute is paid to the debtor and only the remainder is used to satisfy the execution. For this reason, we conclude that statutes related to the homestead-exemption statute support the conclusion that the homestead is *exempt from execution unless the debtor's equity therein exceeds $200,000.*

### B. Legislative History

The legislative history of the homestead-exemption statute also supports construing "value of the homestead exemption" to refer to the debtor's equity in the property. *See Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986) (stating that legislative history can be considered in interpreting a statute only after the statute is found to be ambiguous).

The homestead-exemption statute was amended to include the $200,000 limit in

1993 based on a bill introduced by Representative Thomas Pugh. When explaining his bill to the civil law subcommittee of the judiciary committee, he stated that it "proposes to * * * limit the [exempt] value, *equity,* in a home to $200,000.00 * * *." *Hearing on H.F. No. 592 Before the Civil Law Subcomm. of Judiciary* (March 10, 1993) (emphasis added). When explaining to Representative Solberg how the bill worked, he further stated:

> What this [bill] does, in essence, is to provide the procedure for [the] sale of the property and more particularly, provide a procedure in the event that the debtor and creditor disagrees to the value of the property. In other words, we're *protecting up to $200,000.00 in equity.*

*Id.* (emphasis added). When Representative Pugh introduced his bill to the Committee on Judiciary, he was asked by Representative Limmer the following question:

> On section 2(a), I'm just following the bill semi, but it says it limits the exemption to $200,000 in equity. That's not in value of the property, its $200,000 in equity?

*Hearing on H.F. No. 592 Before the Judiciary Comm.* (Mar. 15, 1993). Representative Pugh replied: "Mr. Chair, Representative Limmer, that is correct. *The equity.*" *Id.* (emphasis added). Later, in describing the bill to the entire House of Representatives, Representative Pugh once again explained the bill:

> What House File 592 does is limit that amount that is subject to protection to the sum of *$200,000 in equity* over and above any mortgaged value for a homestead in residential areas * * *.

*House Floor Debate on H.F. No. 592* (Apr. 15, 1993) (statement of Rep. Pugh) (emphasis added).

While the Senate made some amendments to the bill, none affected the portion at issue in this appeal. Based on this legislative history, we cannot help but conclude that the legislature that amended the statute intended the amended statute to exempt up to $200,000 in homestead equity.

## C. Effect of Contrary Interpretation

To read "value of the homestead exemption" to refer to the market value of the property would seriously erode the protection afforded by the homestead exemption. It would allow a creditor to force the sale of a homestead even where the debtor's equity is less than $200,000. Such a result would violate the purpose of the exemption—to allow debtors to retain their family home as a safe harbor—and would not accomplish any practical benefit for the creditor. The homestead would be sold subject to prior encumbrances and the court would distribute the proceeds to the debtor to the extent of the exemption as required by section 550.175, subdivision 4(d). Thus, while the debtor would lose his or her home and receive the net proceeds from the sale, the creditor would receive nothing. It is only where the debtor's equity exceeds $200,000 that the creditor can achieve any benefit from the sale on execution. Thus, there is no public policy rationale for allowing an execution sale of homestead unless the debtor's equity exceeds $200,000.

In light of the ambiguity in section 510.02, the interaction of that provision with aspects of other relevant statutes, the unmistakably clear legislative history of the 1993 amendment of the provision, and the counterproductive results of reading the statute to protect market value rather than equity, we conclude that the phrase "value of the homestead exemption" used in section 510.02 refers to the value of the debtor's equity in the property.

## II.

Respondent claims that the district court erred in concluding that because appellants' 3.9–acre property is located outside a laid-out or platted portion of a city, it qualifies for a homestead exemption of up to 160 acres under section

510.02. Where a district court applies a statute in light of its factual findings, the district court's "conclusion of law will include a determination of mixed questions of law and fact, determination of 'ultimate' facts, and legal conclusions." *Maxfield v. Maxfield*, 452 N.W.2d 219, 221 (Minn. 1990). Under these circumstances, we will affirm if the findings of fact "are not without support in the evidence" and if the conclusions based on those facts are not contrary to the statutory mandate. *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn.1984).

Geographically, for a homestead to be exempt from legal process, it

> may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If the homestead is within the laid out or platted portion of a city, its area must not exceed one-half of an acre.

Minn.Stat. § 510.02. It is undisputed that appellants' property is not located within the laid-out or platted portions of any city and is not within the city limits of any city. Rather, the property is part of a lakeshore subdivision in Carver County. Respondent, however, claims that the nature of the property, rather than whether the property is in a "city," is dispositive.

The courts have long struggled with the language of the homestead-exemption statute. *See In re Becker*, 215 B.R. 585, 586 (8th Cir.BAP 1998) (stating that the language and application of section 510.02 has long vexed the Minnesota courts); *National Bank v. Banholzer*, 69 Minn. 24, 26, 71 N.W. 919, 919 (1897) (stating that the "court has struggled with this statute ever since its passage"); *Smith's Estate v. Schubert*, 51 Minn. 316, 316, 53 N.W. 711, 711 (1892) (characterizing the statute as "crude"); *Mintzer v. St. Paul Trust Co.*, 45 Minn. 323, 325, 47 N.W. 973, 974 (1891) (characterizing the statute as "beyond any

satisfactory construction"). *Banholzer* was the last case to do an in-depth analysis of how to determine whether property is within a "city" under the language of what is now section 510.02.[1] In *Banholzer*, the Minnesota Supreme Court, after several prior attempts to interpret the statute, "adopt[ed] the distinction between rural and urban as the controlling principle." *Banholzer*, 69 Minn. at 26, 71 N.W. at 919. In doing so, the Supreme Court established a two-part test:

> If, as a factual matter, the surrounding area is conclusively urban in character, the claimants are limited to the one-half acre permitted under section 510.01. If the surrounding area is conclusively rural, the claimants are permitted to exempt up to 160 acres. However, if the surrounding area is not conclusively rural or urban, a second factual determination must be made as to the character of the homestead itself.

*Becker*, 215 B.R. at 587 (citing *Banholzer*, 69 Minn. at 28–29, 71 N.W. at 920). Here, the record does not conclusively show that the surrounding area is rural in nature or urban in nature and the district court did not make a finding as to the nature of appellants' property. Because the district court did not make the findings required by the law, we reverse and remand to with instruction that it apply the *Banholzer* test.

### DECISION

Section 510.02 is ambiguous regarding whether it refers to the market "value" of the property or the "value" of the debtor's equity in the property. Related statutes, the legislative history of section 510.02, and the nonviability of alternative interpretations of the statute indicate that the statutory homestead exemption applies to the value of the debtor's equity. Therefore, we reverse the district court's conclu-

---

1. The *Banholzer* court did not apply Minn. Stat. § 510.02, but rather, Gen.Stat. 1894, § 5521. However, other than different acreage limitations, on the critical issue of whether the property was within a platted portion of land, the language of both statutes is essentially the same.

sion to the contrary. In addition, because the trial court did not make the findings required to determine whether appellants' property is rural or urban, we reverse and remand with instruction that such a finding be made. Whether to reopen the record on remand shall be discretionary with the district court. We express no opinion on how to resolve the remanded issue.

**Reversed and remanded.**